UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

YAJAIRA VELAZQUEZ, on behalf of herself    Civil Case No.
and FLSA Collective Plaintiffs,

                          Plaintiff,        **COLLECTIVE ACTION
                                            COMPLAINT**

          -against-

YOH SERVICES, LLC, CNBC, INC.,             **Trial by Jury Demanded**
CNBC, LLC, NBCUNIVERSAL MEDIA, LLC,
BRENDA GUZMAN, individually and in her
official capacity, MARY DUFFY, individually
and in her official capacity, JOHN AND JANE
DOES 1-10, individually and in their official
capacities, XYZ CORP. 1-10,

                          Defendants.
_____

      Plaintiff, Yajaira Velazquez ("Plaintiff" and/or "Velazquez"), on behalf of herself and

FLSA Collective Plaintiffs, by and through her attorneys The Law Offices of Rudy A.

Dermesropian, LLC, complaining of Defendants Yoh Services, LLC ("Yoh"), CNBC, Inc. ("CI"),

CNBC, LLC ("CL"), NBCUniversal Media, LLC ("Universal") ("CI," "CL" and "Universal"

collectively referred to as "CNBC Defendants"), Brenda Guzman ("Guzman"), individually and

in her official capacity, Mary Duffy ("Duffy"), individually and in her official capacity, John and

Jane Does 1-10, individually and in their official capacities, XYZ Corp. 1-10 (collectively,

"Defendants"), states as follows:

      1.      Plaintiff alleges, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C.

§§201, *et seq*. ("FLSA"), that she and FLSA Collective Plaintiffs are entitled to recover from

Defendants lawfully earned wages and benefits, as well as liquidated damages, reasonable

attorneys' fees and costs because of Defendants' violations of the wage-and-hour provisions of the FLSA.

2.      Plaintiff further alleges that, pursuant to the New York Labor Law Article 6, §§ 190, *et seq*. ("NYLL"), that she and FLSA Collective Plaintiffs are entitled to recover from Defendants lawfully earned wages and benefits, as well as liquidated damages, statutory penalties, reasonable attorneys' fees and costs because of Defendants' violations of the wage-and-hour provisions of the NYLL.

3.      This action is also brought to remedy Defendants' intentional and unlawful discrimination, unlawful harassment, and unlawful termination of Plaintiff's employment, based on her race, color, and national origin, all in violation of the Executive Law of the State of New York, New York State Human Rights Law ("Executive Law"), § 296, *et seq.*, and the Administrative Code of the City of New York, New York City Human Rights Law ("Administrative Code"), § 8-101, *et seq*.

4.      Plaintiff also brings this action to remedy Defendants' retaliatory actions in violation of the New York Whistleblower Act, Labor Law § 740, *et seq*.

## **INTRODUCTION**

5.      Upon information and belief, Defendant Yoh hires employees, similar to Plaintiff, and places them with third party companies, similar to the CNBC Defendants.

6.      However, the CNBC Defendants misclassify these workers, including and similarly situated to Plaintiff, as "independent contractors," but treat them as employees by exercising control over their employment.

2

7.      Upon information and belief, Defendants currently retain the services of more than one hundred (100) workers, similarly situated to Plaintiff, who are hired by Defendants and identified as "independent contractors."

8.      Although identified as "independent contractors," Defendants treat their workers as employees by, among other things:

a.  establishing a mandatory set of work hours for the workers;

b.  requiring the workers to clock-in or sign-in at the beginning of their shift and to clock-out or sign-out at the end of their shift;

c.  requiring each worker to request permission to take time off from work or for a personal day;

d.  receiving instructions and training on how to perform their duties and responsibilities;

e.  requiring the workers to perform their duties and responsibilities in the order and sequence designated by the Defendants;

f.  requiring all such workers to perform their duties and responsibilities on the premises of the Defendants, or locations specifically designated by Defendants;

g.  furnishing to each worker the necessary tools and supplies in order to perform their jobs;

h.  requiring the workers to wear uniforms with the name and logo of the CNBC Defendants on them;

i.  providing workers with performance reviews, feedback and comments regarding their job performance; and

j.  not setting a termination date whereby the relationship between Defendants and the workers continues indefinitely without an end date to complete a particular job.

9.  Defendants have been and are still trampling the federal and state interests in pursuit of their own profits, saving significant amounts in tax withholdings, benefits, implementation of policies, by failing to make, keep, and preserve accurate records, including but not limited to, hours worked each workday and total hours worked each workweek, as required by the FLSA, 29 U.S.C. § 211(c), and supporting federal regulations, and by failing to provide timely, accurate, itemized wage statements including, *inter alia*, hours worked and taxes withheld in violation of the FLSA and the NYLL.

10.  Because Defendants' violations of the law are ongoing, Plaintiff and FLSA Collective Plaintiffs also seek injunctive relief to ensure that the unlawful policies and practices do not continue.

## PARTIES

11.  Plaintiff is a Black Hispanic female, of Dominican origins, and a former employee of Defendants, who resides in New York County, New York.

12.  Plaintiff is an "employee" within the meaning of Executive law § 292(6), a "person" within the meaning of the Administrative Code §8-102(1), and is covered as an "employee" within the meaning of the FLSA and NYLL.

13.  Upon information and belief, Defendant Yoh has a primary place of business at 1500 Spring Garden Street, Philadelphia, PA.

14.  Upon information and belief, Defendant Yoh is a foreign limited liability company with offices in Rochester and Albany in New York, and that conducts business in New York County as well as other counties across the State of New York.

4

15.     Upon information and belief, Defendant Yoh is a talent and outsourcing company, and its primary services include temporary placement, direct hire, managed staffing services, and outsourced solutions.

16.     Defendant Yoh is an "employer" within the meaning of the Executive Law and the Administrative Code because they have more than 4 persons in their employ, and is a covered "employer" that has engaged and continues to engage in interstate commerce within the meaning of the FLSA and the NYLL.

17.     Upon information and belief, Defendants CI and CL represent a basic cable, internet and satellite business news television channel that is owned by NBCUniversal News Group, a division of Defendant Universal, which is owned by Comcast Corporation.

18.     Upon information and belief, CNBC Defendants are headquartered at 900 Sylvan Avenue, Englewood Cliffs, New Jersey.

19.     CNBC Defendants are an "employer" within the meaning of the Executive Law and the Administrative Code because they had more than 4 persons in their employ, and is a covered "employer" that has engaged and continues to engage in interstate commerce within the meaning of the FLSA and the NYLL.

20.     Upon information and belief, CNBC Defendants primarily carry business day coverage of U.S. and international financial markets and news.

21.     Upon information and belief, at all relevant times herein, Defendant Duffy was the Vice President of Talent Development, Senior Executive and Producer at CNBC.

22.     Upon information and belief, Defendant Duffy was an "employee" within the meaning of the Executive Law, and a "person" within the meaning of the Administrative Code, a

decision maker and a person of authority that exercised control over the terms and conditions of Plaintiff's employment and those of FLSA Collective Plaintiffs.

23.     Upon information and belief, with respect to Plaintiff and other FLSA Collective Plaintiffs, Defendant Duffy exercised the power to (i) fire and hire, (ii) determine rate and method of pay, (iii) set employment schedules, (iv) determine and order the specific uniforms to wear, and (v) otherwise affect the quality of employment.

24.     Upon information and belief, at all relevant times herein, Defendant Guzman was a Production Manager at CNBC.

25.     Upon information and belief, Defendant Guzman was an "employee" within the meaning of the Executive Law, and a "person" within the meaning of the Administrative Code, Plaintiff's direct supervisor, a decision maker and a person of authority that exercised control over the terms and conditions of Plaintiff's employment and those of FLSA Collective Plaintiffs.

26.     Upon information and belief, with respect to Plaintiff and other FLSA Collective Plaintiffs, Defendant Guzman exercised the power to (i) fire and hire, (ii) determine rate and method of pay, (iii) set employment schedules, (iv) determine and order the specific uniforms to wear, and (v) otherwise affect the quality of employment.

27.     Defendants John and Jane Does 1–10 are natural persons whose true identities are not yet known to Plaintiff and are partners, shareholders, principals, employees, agents or persons otherwise associated with one or more of the other Defendants, or were otherwise in positions which enabled them to commit, or to aid and abet in the commission of, the wrongful acts against Plaintiff set forth herein.

28.     Defendants XYZ Corp. 1–10 are additional entities whose true identities are not yet known to Plaintiff, which are owned or operated by, affiliated with, owned and/or managed by or for the benefit of one or more other Defendants, or any combination of any or all of them.

29.     In committing the wrongful conduct described in this action and obtaining the benefits therefrom to Plaintiff's loss, cost, damage and detriment, one or more of the Defendants acted and operated interchangeably as principals, agents, instrumentalities and/or *alter egos* of one or more of them and/or each other.

30.     Each John and Jane Doe Defendant is an "employee" within the meaning of the Executive Law, and a "person" within the meaning of the Administrative Code, a decision maker and a person of authority that exercised control over the terms and conditions of Plaintiff's employment and those of FLSA Collective Plaintiffs.

31.     Each XYZ Corp. defendant is an "employer" within the meaning of the Executive Law and the Administrative Code because it has more than 4 persons in its employ.

## JURISDICTION AND VENUE

32.     This Court has subject matter jurisdiction with respect to Plaintiff's federal claims pursuant to 28 U.S.C. §§ 1331, 1337 and 1343, and 29 U.S.C. §§201, *et seq.*

33.     The unlawful employment practices were mostly committed in New York County, Southern District of New York.

34.     This Court has original subject matter jurisdiction over the instant action pursuant to 28 U.S.C. § 1331, as this action arises under the laws of the United States.

35.     This Court also has jurisdiction over Plaintiff's claims under the FLSA pursuant to 29 U.S.C. § 216(b).

36. This Court has supplemental jurisdiction over Plaintiff's New York State and New York City claims pursuant to 28 U.S.C. § 1367(a). The New York State and New York City claims are inexorably related to, arise out of the same operative facts and circumstances as, and are a necessary, integral part of the federal law claims, such that the federal claims and New York State and New York City law claims form part of the same case or controversy.

37. This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

38. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b)(2) as the majority of the events or omissions giving rise to the claims occurred in the County of New York, New York.

39. Plaintiff's claims involve matters of national or interstate interest.

40. At all relevant times herein, Yoh and the CNBC Defendants were and continue to be an "enterprise engaged in commerce" within the meaning of the FLSA.

41. At all relevant times herein, the work performed by Plaintiff and FLSA Collective Plaintiffs was directly essential to the business operated by Defendants.

42. At all relevant times, Plaintiff and the other FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all culminating in a willful misclassification of workers and intentional failure and/or refusal to provide proper benefits, implementation of policies including anti-discrimination policies. The claims of Plaintiff stated herein are essentially the same as those of the other FLSA Collective Plaintiffs.

43.     The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to §16(b) of the FLSA, 29 U.S.C. 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from the Defendants. Notice can be provided to the FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

## FACTS

### *Misclassification of Workers*

44.     On or about October 1, 2014, Plaintiff was hired by Defendant Yoh as a Hair and Make-up Artist.

45.     At all relevant times herein, Plaintiff remained employed as a Hair and Make-up Artist.

46.     Immediately after hiring Plaintiff, Defendant Yoh placed Plaintiff "at CNBC as a Hair & Make-up Artist" and was directed to "report to the following address on [her] first day of employment: CNBC, NBC-900 Sylvan Avenue, Englewood Cliffs, NJ."

47.     Upon reporting to the office of the CNBC Defendants in Englewood Cliffs, New Jersey, Plaintiff was instructed to report to Defendant Guzman, the Production Manager at CNBC.

48.     Plaintiff was required to undergo a 3-month probation period with the CBNC Defendants.

49.     During the probationary period:

    a.  CNBC Defendants gave Plaintiff a costume that she was required to wear, which had the CNBC logo and name on it;

    b.  Plaintiff received on the job training and was required to "shadow" another employee during that time;

c. CNBC Defendants provided Plaintiff with all the supplies and make-up she needed to perform her duties and responsibilities, and did not allow Plaintiff to bring or use any of her personal supplies or equipment;

d. Plaintiff reported to Defendant Guzman who had direct control over Plaintiff's employment terms, schedule, hours and responsibilities;

e. Plaintiff received an end-of-probation evaluation by Defendant Guzman, who found Plaintiff's performance to be satisfactory; and

f. Upon information and belief, there were no complaints regarding or against Plaintiff during her probation.

50. Plaintiff successfully completed her probation at CNBC.

51. During her first year of employment, Plaintiff was also allowed to work overtime hours and was paid time and a half her hourly rate for most of the overtime hours she worked.

52. Plaintiff worked an average of 5 hours of overtime during her first year of employment with Defendants.

53. After the completion of her first year of employment with Defendants, Plaintiff's work hours were decreased to 30 hours per week.

54. Upon information and belief, Defendants reduced Plaintiff's hours in order to avoid providing her with the required employee benefits, including but not limited to (i) minimum wage and overtime rules, (ii) the right to a safe and healthy workplace and workers' compensation coverage if injured on the job, (iii) protections against sexual harassment and discrimination, (iv) unemployment insurance and other "safety net" benefits, (v) any paid sick, vacation, health benefits or pensions provided to "employees," (vi) the right to organize a union and to bargain

collectively for better working conditions, and (vii) Social Security and Medicaid payments credited to employee's accounts.

55.     However, Plaintiff consistently worked far over 30 hours each week and has not received the proper compensation or benefits during the remainder of her employment until the time of her unlawful termination on February 4, 2016.

56.     As admitted by Defendant Guzman, Defendants were "carrying over" the hours that Plaintiff worked over 30 hours each week, so that Defendants continue to avoid properly compensating Plaintiff.

57.     In fact, during her employment, Plaintiff repeatedly worked over 40 hours but was not paid any overtime, especially after Defendants started "carrying over" the hours that Plaintiff worked over 30 hours each week.

58.     At all relevant times herein, Plaintiff was assigned to work a fixed schedule.

59.     After the completion of the first year of employment with Defendants, Plaintiff's schedule became from 8:30 a.m. to 1:30 p.m.

60.     However, as described herein, Plaintiff repeatedly worked longer than the designated schedule.

61.     Plaintiff and the other FLSA Collective Plaintiffs have been victims of a common policy and plan perpetrated by Defendants that has violated their rights under the FLSA and the NYLL by denying them proper pay and benefits.

62.     Also, Defendants did not withhold any federal or state income taxes, or any Social Security or Medicaid taxes, from any of the amounts paid to Plaintiff and the other FLSA Collective Plaintiffs.

63.     Defendants failed to provide Plaintiff and the other FLSA Collective Plaintiffs with a Notice and Acknowledgement of Wage Rate and Designated Payday Hourly Rate plus Overtime.

64.     At all relevant times herein, Defendants' unlawful conduct, policies, patterns and/or practices described herein have been willful.

65.     As part of their ongoing business practices, Defendants have intentionally, willfully, and repeatedly harmed Plaintiff and the other FLSA Collective Plaintiffs by engaging in a pattern, practice, and/or policy of violating the FLSA and the NYLL, as described herein.  This ongoing policy, pattern or practice includes, but is not limited to:

a.    CNBC Defendants unlawfully classified Plaintiff and the other FLSA Collective Plaintiffs as independent contractors as opposed to employees;

b.    CNBC Defendants failed to adopt anti-discrimination and anti-harassment policies applicable to Plaintiff and the other FLSA Collective Plaintiffs; and

c.    CNBC Defendants failed to keep accurate and adequate records of hours worked by Plaintiff and the other FLSA Collective Plaintiffs as required by the FLSA and the NYLL.

66.     Upon information and belief, Defendants' unlawful conduct described herein has been pursuant to a corporate policy or practice of minimizing labor costs by knowingly misclassifying certain employees as independent contractors in order to deny them proper compensation and benefits in violation of the FLSA and the NYLL.

67.     Defendants' unlawful conduct, policies and practices have been widespread, repeated, consistent and ongoing.

68.     Defendants' unlawful conduct, as set forth herein, has been intentional, willful, and in bad faith, and has caused significant damages to Plaintiff and the other FLSA Collective Plaintiffs.

### *Whistleblower Claims*

69.     Plaintiff, who has over a decade of experience working as a Hair and Make-up Artist for some the biggest agencies and television personalities, is highly experienced and qualified in her field of work.

70.     On or about June 8, 2015, and again on June 13, 2015, due to unsafe and negligently maintained conditions at the workplace, Plaintiff burnt her right and left hands because of unattended equipment.

71.     Since on or about June 2015, Plaintiff repeatedly complained to her direct supervisor Guzman about the different safety risks and violations at the workplace and the unattended and mishandled equipment.

72.     CNBC Defendants' violations could easily cause bodily injuries to employees and guests, in the same manner that Plaintiff was injured, or even cause a fire.

73.     In fact, immediately following the injuries she sustained, Plaintiff contacted Defendant Guzman and told her that she burnt her hands and asked to send an email to all the artists telling them to pay attention with their equipment or to take the necessary measures to avoid a catastrophic incident.

74.     Within a week of complaining to Defendant Guzman, CNBC Defendants, and especially Guzman, started to ignore Plaintiff and reduced her work hours by 5 to 6 hours per week.

75.     Such retaliatory actions in ignoring Plaintiff and reducing her work hours continued until her unlawful termination on February 4, 2016.

76.     Furthermore, during her employment with Defendants, Plaintiff worked primarily from the New York Mercantile Exchange ("NYMEX") building.

77.     Upon information and belief, the NYMEX is a commodity futures exchange owned and operated by CME Group of Chicago, and located at One North End Avenue in Brookfield Place in the Battery Park City section of Manhattan, New York City.

78.     At the time Plaintiff started working from the NYMEX location, the building was undergoing a construction project.

79.     The health, safety and working conditions at NYMEX were very poor due to the ongoing construction.

80.     For example, there were unattended dangerous equipment and tools, and the air quality was very harming, dangerous and unhealthy.

81.     Plaintiff and the other FLSA Collective Plaintiffs were assigned to work in very close proximity to the construction area, which was filthy, unattended, unsecured, unhealthy, dangerous, and creating an extremely dangerous and poor air quality to the workers and guests.

82.     No precautionary or safety measures were taken by Defendants to ensure the workers' safety and well-being.

83.     In fact, Defendants placed, or allowed the placement, of fans on the floor where Plaintiff and other FLSA Collective Plaintiffs were working, causing Plaintiff and others to breathe more dust and harmful air particles.

84.     In addition, Defendant Duffy would berate Plaintiff whenever she complained about the ongoing safety issues during staff meetings by yelling at her, cutting her off mid-sentence

not allowing her to properly speak at the staff meetings, belittling her in front of other staff members, and dismissing Plaintiff's serious concerns and complaints about health and safety violations.

85.     As a proximate cause of Defendants' negligent and wrongful actions that endangered Plaintiff's health and well-being, Plaintiff was forced to go to Bellevue Hospital Center approximately four (4) weeks after she started working at the NYMEX building.

86.     On June 4, 2015, Plaintiff went to the emergency room due to breathing problems and pains in her respiratory organs, causing her a severe asthma attack.

87.     Plaintiff requested from Guzman to inquire from Duffy whether Plaintiff's medical expenses and costs would be covered by Defendants since her injuries were caused on the job and due to Defendants' negligence.

88.     However, Defendants, including Duffy and Guzman, refused to cover Plaintiff's medical expenses and denied Plaintiff the right to apply for Worker's Compensation benefits.

89.     Plaintiff is still having difficulties breathing as a consequence of the working conditions she was compelled to work in.

90.     Plaintiff was not the only person to get sick because of the air quality at the workplace.

91.     Upon information and belief, the television personality that Plaintiff was working on, Jackie DeAngeles, also got sick and had to go to the hospital for treatment.

92.     Before and after going to the hospital, Plaintiff complained numerous times to Defendant Guzman and other employees of Defendants of the bad and concerning working environment they were forced to work in.

93.     When Plaintiff complained to Defendant Guzman about the health and safety violations and the horrible air quality, Defendants refused and/or failed to take any remedial action, and instead Guzman stated to Plaintiff, "What do you want me to do. You still have to work there."

94.     Edmond Edmundo and Jackie DeAngeles both witnessed Plaintiff complaining to Defendant Guzman.

95.     Upon her return from the hospital in or about June 10, 2015, Plaintiff and other FLSA Collective Plaintiffs were finally transferred to the "pit" of the NYMEX building, which is where all the brokers work from.

96.     However, almost immediately after complaining of the health and safety violations until her unlawful termination, and in retaliation to the repeated complaints that she made, Defendants stopped approving Plaintiff's requests to take time off and restricted her ability to perform other work.

97.     Plaintiff, who was supposed to be an independent contractor, had to cancel her business trips several times causing her significant financial losses.

98.     In further retaliation to Plaintiff's complaints, Defendants also reduced Plaintiff's work hours and gave Plaintiff's hours to another hair and make-up artist.

99.     Plaintiff's work hours remained reduced until her unlawful termination on February 4, 2016.

100.    Defendants also started to intimidate Plaintiff, talking down to her and repeatedly disrespecting her since the moment she complained until her unlawful termination.

101.    Upon information and belief, Plaintiff was unlawfully terminated on February 4, 2016, in retaliation to the repeated complaints she made of the health and safety violations at the workplace.

16

### *Discrimination Claims*

102.     Plaintiff, a Black Hispanic female, and of Dominican origins, reported directly to Defendant Guzman who was a Black light-skinned female.

103.     However, during Plaintiff's employment with Defendants, Guzman repeatedly commented on Plaintiff's skin color and complexion stating, "My complexion is better off than your complexion."

104.     Upon information and belief, Defendant Guzman mistreated Plaintiff throughout her employment with Defendants and terminated her because, at least in part, of Plaintiff's darker skin color.

105.     In addition, during her employment, Defendant Guzman refused to reimburse Plaintiff for her transportation expenses for the different locations of her daily shifts and forced Plaintiff to pay for those transportation expenses from her own personal funds.

106.     However, in contrast, Defendants, especially Guzman, paid other non-Black employees, like Aneshka (White), Sheryl (White), Laura (White) and Adel (White) for their transportation expenses including mileage, tolls, public transportation, and taxis.

107.     Even Plaintiff's replacement, Rachel (White) was getting reimbursed for her transportation expenses.

108.     When Plaintiff complained to Defendant Guzman about not getting reimbursed while other White employees were getting reimbursed for transportation expenses, Guzman replied to Plaintiff, "Why are you being a pain about this? You know Mary is not going to approve your expenses."

109.     Defendant Guzman then added, "If I were you I wouldn't go there with Mary. You are not on her good side."

110.   In or about November 2015, Adel, another hair and make-up artist, informed Plaintiff that she witnessed Defendant Duffy stating to Guzman, "Yajaira, that Dominican girl, is one of your people, and she is upsetting me."

111.   In addition, Rachel, another hair and make-up artist, told Plaintiff that she witnessed Defendant Guzman complain that she is worried about losing her job because of the "artist in New York," referring to Plaintiff.

112.   However, when Rachel approached Guzman seeking clarification about Guzman's statement, Defendant Guzman stated, "Everything is fine other than I was warned about hiring Spanish people."

113.   On or about February 4, 2016, Plaintiff contacted Defendant Guzman at or about 7:40 a.m. informing her that she was running a few minutes late due to commuting delays, to which Guzman responded, "I have you covered. Come to the 2:30 p.m. shift at the NASDAQ instead."

114.   However, at or about 8:45-9:00 a.m. that same morning, Guzman contacted Plaintiff again stating, "Don't come in today, and you are off the rest of the week until further notice."

115.   In contrast, other non-Black, non-Hispanic, and non-Dominican employees, similarly situated to Plaintiff, would frequently come to work late and would not be reprimanded, suspended, told not to come to work, or terminated as Plaintiff was.

116.   For example, Janet, a White hair and make-up artist, who is not Hispanic and not Dominican, would arrive to work 15 to 30 minutes late almost every single day but would never be reprimanded, suspended, told not to come to work, or terminated.

117.    In fact, when Plaintiff previously complained to Defendant Guzman about Janet being chronically late, Guzman responded, "I have to be careful with Janet because she is an older Jewish lady and she can sue us."

118.    At the time of Plaintiff's termination, Guzman stated to Plaintiff that Defendant Duffy was allegedly "upset" with Plaintiff, which is consistent with the November 2015 statement by Duffy who stated to Guzman, "Yajaira, that Dominican girl, is one of your people, and she is upsetting me."

119.    Clearly Defendants Guzman and Duffy's dislike and adverse treatment of Plaintiff was fueled and motivated by Plaintiff's race, skin color and Dominican origins.

120.    Upon information and belief, Plaintiff was terminated in retaliation to all her prior complaints and because of her race, skin color, and national origin.

121.    Defendant Yoh did not make any attempt to place Plaintiff in any other employment position.

122.    Other hair and make-up artists, who were not Black, not Hispanic or not from the Dominican Republic, were treated better and more favorably than Plaintiff.

123.    Upon information and belief, Rachel, who is White, non-Hispanic and non-Dominican; Aneshka, who is White and of Polish origins; Adel, who is White, non-Hispanic and non-Dominican; and Vince, who is non-Black, Asian and non-Dominican, were all treated more favorably than Plaintiff without being continuously harassed, did not receive derogatory statements regarding their skin color and complexion, were not retaliated against, and were not terminated by Defendants.

124.    In addition, Plaintiff made numerous complaints regarding her incorrect pay to Defendant Guzman.

125.     However, Defendant Guzman, after discussing with Duffy, would compel Plaintiff to accept a lower compensation than originally agreed.

126.     Upon information and belief, no other non-Black, non-Hispanic and non-Dominican employee was paid less than their original agreement.

127.     Upon information and belief, Plaintiff was replaced by a non-Black, non-Hispanic, and non-Dominican employee.

**AS AND FOR A FIRST CAUSE OF ACTION**
**Violation of the Fair Labor Standard Act ("FLSA") – Overtime Wages**
**Brought on behalf of Plaintiff and FLSA Collective Plaintiffs**

128.     Plaintiff repeats, reiterates, re-alleges and incorporates by reference all prior allegations in all preceding paragraphs as though fully set forth herein.

129.     The overtime wage provisions set forth in the FLSA, 29 U.S.C. §§ 201 *et seq*., and the supporting federal regulations, apply to Defendants and protect Plaintiff and the FLSA Collective Plaintiffs.

130.     At all relevant times, upon information and belief, Defendants were and continue to be employers engaged in interstate commerce and/or the production of goods and services for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

131.     Further, Plaintiff and FLSA Collective Plaintiffs are covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

132.     At all relevant times, Defendants employed Plaintiff and FLSA Collective Plaintiffs within the meaning of the FLSA.

133.     Upon information and belief, at all relevant times, Defendants had gross revenues in excess of $500,000.

134.    At all relevant times, Defendants had a policy and practice of "carrying over" worked hours from one week to the next and failing and refusing to pay overtime compensation at the statutory rate of time and one-half to Plaintiff and FLSA Collective Plaintiffs for their hours worked in excess of 40 hours per workweek.

135.    Defendants have failed to pay Plaintiff and the FLSA Collective Plaintiffs overtime wages at time and a half for hours that they worked over 40 hours in a work-week.

136.    Records, if any, concerning the number of hours worked by Plaintiff and FLSA Collective Plaintiffs and the actual compensation paid to Plaintiff and FLSA Collective Plaintiffs are in the possession and custody of the Defendants. Plaintiff and FLSA Collective Plaintiffs intend to obtain these records, to the extent they exist, by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will then seek leave of Court to amend this Complaint to set forth the precise amount due.

137.    Defendants knew of and/or showed a willful disregard for the provisions of the FLSA as evidenced by their failure to compensate Plaintiff and FLSA Collective Plaintiffs at the statutory rate of time and one-half for their hours worked in excess of 40 hours per week when Defendants knew or should have known such was due.

138.    Defendants failed to properly disclose or apprise Plaintiff and FLSA Collective Plaintiffs of their rights under the FLSA.

139.    As a proximate result of Defendants' unlawful acts, Plaintiff and the FLSA Collective Plaintiffs have been deprived of overtime compensation in amounts to be determined at trial, and are entitled to recover such amounts, liquidated damages, pre- and post-judgment interests, attorneys' fees, costs, and other compensation pursuant to the FLSA.

140.    Defendants' unlawful conduct, as described in this Collective Action, has been willful and intentional.

141.    Defendants were or should have been aware that the practices described in this Collective Action are unlawful and Defendants have not made a good faith effort to comply with the FLSA with respect to the compensation of Plaintiff and FLSA Collective Plaintiffs.

**AS AND FOR A SECOND CAUSE OF ACTION**
**Violation of the New York Labor Law ("NYLL") – Overtime Wages**
**Brought on behalf of Plaintiff and FLSA Collective Plaintiffs**

142.    Plaintiff repeats, reiterates, re-alleges and incorporates by reference all prior allegations in all preceding paragraphs as though fully set forth herein.

143.    The overtime wage provisions set forth in the NYLL Art. 19, §§ 650 *et seq*., and the supporting state regulations, apply to Defendants and protect Plaintiff and the FLSA Collective Plaintiffs.

144.    At all relevant times, Defendants employed Plaintiff and FLSA Collective Plaintiffs within the meaning of the NYLL.

145.    At all relevant times, Defendants had a policy and practice of "carrying over" worked hours from one week to the next and failing and refusing to pay overtime compensation at the statutory rate of time and one-half to Plaintiff and FLSA Collective Plaintiffs for their hours worked in excess of 40 hours per workweek.

146.    Defendants have failed to pay Plaintiff and the FLSA Collective Plaintiffs overtime wages at time and a half for hours that they worked over 40 hours in a work-week.

147.    Records, if any, concerning the number of hours worked by Plaintiff and FLSA Collective Plaintiffs and the actual compensation paid to Plaintiff and FLSA Collective Plaintiffs are in the possession and custody of the Defendants. Plaintiff and FLSA Collective Plaintiffs intend

22

to obtain these records, to the extent they exist, by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will then seek leave of Court to amend this Complaint to set forth the precise amount due.

148.   Defendants knew of and/or showed a willful disregard for the provisions of the NYLL as evidenced by their failure to compensate Plaintiff and FLSA Collective Plaintiffs at the statutory rate of time and one-half for their hours worked in excess of 40 hours per week when Defendants knew or should have known such was due.

149.   Defendants failed to properly disclose or apprise Plaintiff and FLSA Collective Plaintiffs of their rights under the NYLL.

150.   As a proximate result of Defendants' unlawful acts, Plaintiff and the FLSA Collective Plaintiffs have been deprived of overtime compensation in amounts to be determined at trial, and are entitled to recover such amounts, liquidated damages, pre- and post-judgment interests, attorneys' fees, costs, and other compensation pursuant to the NYLL.

151.   Defendants' unlawful conduct, as described in this Collective Action, has been willful and intentional.

152.   Defendants were or should have been aware that the practices described in this Collective Action are unlawful and Defendants have not made a good faith effort to comply with the NYLL with respect to the compensation of Plaintiff and FLSA Collective Plaintiffs.

**AS AND FOR A THIRD CAUSE OF ACTION**
**Violation of the New York Labor Law ("NYLL") – Recordkeeping**
**Brought on behalf of Plaintiff and FLSA Collective Plaintiffs**

153.   Plaintiff repeats, reiterates, re-alleges and incorporates by reference all prior allegations in all preceding paragraphs as though fully set forth herein.

154.    Defendants failed to make, keep, and preserve accurate records with respect to Plaintiff and the FLSA Collective Plaintiffs, including, but not limited to, hours worked each workday and total hours worked each work week, as required by NYLL Art. 19 *et seq*., and supporting regulations.

155.    Defendants' unlawful conduct, as described in this Collective Action, has been willful and intentional.

156.    As a result of Defendants' unlawful acts, Plaintiff and the FLSA Collective Plaintiffs were damaged in amounts to be determined at trial, and are entitled to recover such amounts, liquidated damages, pre- and post-judgment interests, attorneys' fees, costs, and other compensation pursuant to NYLL.

157.    Defendants were aware or should have been aware that the practices described in this Collective Action are unlawful. Defendants have not made a good faith effort to comply with the NYLL with respect to recordkeeping.

**AS AND FOR A FOURTH CAUSE OF ACTION**
**Violation of the New York Labor Law ("NYLL")**
**Failure to Provide Itemized Wage Statements**
**Brought on behalf of Plaintiff and FLSA Collective Plaintiffs**

158.    Plaintiff repeats, reiterates, re-alleges and incorporates by reference all prior allegations in all preceding paragraphs as though fully set forth herein.

159.    Upon information and belief, Defendants knowingly and intentionally failed to provide timely, accurate, and complete itemized wage statements including, *inter alia*, hours worked and taxes withheld, to Plaintiff and the FLSA Collective Plaintiffs in violation of the NYLL.

160.    Such failure prohibited Plaintiff and the FLSA Collective Plaintiffs from, among other things, knowing the amount of hours worked and wages to which they are and were entitled.

161.   Plaintiff and the FLSA Collective Plaintiffs are entitled to and seek injunctive relief requiring Defendants to comply with NYLL by providing timely, accurate, itemized wage statements, and further seek attorneys' fees, costs, and other compensation pursuant to NYLL.

## AS AND FOR A FIFTH CAUSE OF ACTION
### Race Discrimination in Violation of Executive Law § 296, *et seq*.
### Brought on behalf of Plaintiff

162.   Plaintiff repeats, reiterates, re-alleges and incorporates by reference all prior allegations in all preceding paragraphs as though fully set forth herein.

163.   Defendants violated Executive Law §296, *et seq*., by engaging in, perpetuating and permitting supervisory and decision making employees to engage in discriminatory employment practices in which Plaintiff's race was the motivating, if not the only factor.

164.   As a result of Defendants' aforementioned conduct, Plaintiff has suffered, and continues to suffer, loss of past and future wages and benefits, mental anguish, severe emotional distress, anxiety, loss of enjoyment of life, and other monetary damages connected with Defendants' aforementioned violations.

165.   Plaintiff continues to suffer and to incur additional damages by reason of the foregoing.

166.   As a result of the outrageous and blatantly discriminatory conduct of Defendants, with such conduct that contravenes public policies and statutes, Plaintiff is entitled to punitive damages.

## AS AND FOR A SIXTH CAUSE OF ACTION
### Color Discrimination in Violation of Executive Law § 296, *et seq*.
### Brought on behalf of Plaintiff

167.   Plaintiff repeats, reiterates, re-alleges and incorporates by reference all prior allegations in all preceding paragraphs as though fully set forth herein.

168.    Defendants violated Executive Law §296, *et seq.*, by engaging in, perpetuating and permitting supervisory and decision making employees to engage in discriminatory employment practices in which Plaintiff's skin color was the motivating, if not the only factor.

169.    As a result of Defendants' aforementioned conduct, Plaintiff has suffered, and continues to suffer, loss of past and future wages and benefits, mental anguish, severe emotional distress, anxiety, loss of enjoyment of life, and other monetary damages connected with Defendants' aforementioned violations.

170.    Plaintiff continues to suffer and to incur additional damages by reason of the foregoing.

171.    As a result of the outrageous and blatantly discriminatory conduct of Defendants, with such conduct that contravenes public policies and statutes, Plaintiff is entitled to punitive damages.

### AS AND FOR A SEVENTH CAUSE OF ACTION
**National Origin Discrimination in Violation of Executive Law § 296, *et seq.***
**Brought on behalf of Plaintiff**

172.    Plaintiff repeats, reiterates, re-alleges and incorporates by reference all prior allegations in all preceding paragraphs as though fully set forth herein.

173.    Defendants violated Executive Law §296, *et seq.*, by engaging in, perpetuating and permitting supervisory and decision making employees to engage in discriminatory employment practices in which Plaintiff's national origin was the motivating, if not the only factor.

174.    As a result of Defendants' aforementioned conduct, Plaintiff has suffered, and continues to suffer, loss of past and future wages and benefits, mental anguish, severe emotional distress, anxiety, loss of enjoyment of life, and other monetary damages connected with Defendants' aforementioned violations.

175.     Plaintiff continues to suffer and to incur additional damages by reason of the foregoing.

176.     As a result of the outrageous and blatantly discriminatory conduct of Defendants, with such conduct that contravenes public policies and statutes, Plaintiff is entitled to punitive damages.

## AS AND FOR AN EIGHTH CAUSE OF ACTION
### Race Discrimination in Violation of Administrative Code § 8-107, *et seq*.
### Brought on behalf of Plaintiff

177.     Plaintiff repeats, reiterates, re-alleges and incorporates by reference all prior allegations in all preceding paragraphs as though fully set forth herein.

178.     Defendants violated Administrative Code § 8-107, *et seq*., by engaging in, perpetuating and permitting supervisory and decision making employees to engage in discriminatory employment practices in which Plaintiff's race was the motivating, if not the only factor.

179.     As a result of Defendants' aforementioned conduct, Plaintiff has suffered, and continues to suffer, loss of past and future wages and benefits, mental anguish, severe emotional distress, anxiety, loss of enjoyment of life, and other monetary damages connected with Defendants' aforementioned violations.

180.     Plaintiff continues to suffer and to incur additional damages by reason of the foregoing.

181.     As a result of the outrageous and blatantly discriminatory conduct of Defendants, with such conduct that contravenes public policies and statutes, Plaintiff is entitled to punitive damages.

### AS AND FOR A NINTH CAUSE OF ACTION
**Color Discrimination in Violation of Administrative Code § 8-107,** *et seq.*
**Brought on behalf of Plaintiff**

182.    Plaintiff repeats, reiterates, re-alleges and incorporates by reference all prior allegations in all preceding paragraphs as though fully set forth herein.

183.    Defendants violated Administrative Code § 8-107, *et seq.*, by engaging in, perpetuating and permitting supervisory and decision making employees to engage in discriminatory employment practices in which Plaintiff's skin color was the motivating, if not the only factor.

184.    As a result of Defendants' aforementioned conduct, Plaintiff has suffered, and continues to suffer, loss of past and future wages and benefits, mental anguish, severe emotional distress, anxiety, loss of enjoyment of life, and other monetary damages connected with Defendants' aforementioned violations.

185.    Plaintiff continues to suffer and to incur additional damages by reason of the foregoing.

186.    As a result of the outrageous and blatantly discriminatory conduct of Defendants, with such conduct that contravenes public policies and statutes, Plaintiff is entitled to punitive damages.

### AS AND FOR A TENTH CAUSE OF ACTION
**National Origin Discrimination in Violation of Administrative Code § 8-107,** *et seq.*
**Brought on behalf of Plaintiff**

187.    Plaintiff repeats, reiterates, re-alleges and incorporates by reference all prior allegations in all preceding paragraphs as though fully set forth herein.

188.    Defendants violated Administrative Code § 8-107, *et seq.*, by engaging in, perpetuating and permitting supervisory and decision making employees to engage in

discriminatory employment practices in which Plaintiff's national origin was the motivating, if not the only factor.

189.    As a result of Defendants' aforementioned conduct, Plaintiff has suffered, and continues to suffer, loss of past and future wages and benefits, mental anguish, severe emotional distress, anxiety, loss of enjoyment of life, and other monetary damages connected with Defendants' aforementioned violations.

190.    Plaintiff continues to suffer and to incur additional damages by reason of the foregoing.

191.    As a result of the outrageous and blatantly discriminatory conduct of Defendants, with such conduct that contravenes public policies and statutes, Plaintiff is entitled to punitive damages.

**AS AND FOR AN ELEVENTH CAUSE OF ACTION**
**Retaliation in Violation of New York Whistleblower Act, Labor Law § 740, *et seq*.**

192.    Plaintiff repeats, reiterates, re-alleges and incorporates by reference all prior allegations in all preceding paragraphs as though fully set forth herein.

193.    Defendants violated New York Whistleblower Act, Labor Law § 740, *et seq.* by engaging in, perpetuating and permitting supervisory and decision making employees to engage in retaliatory actions against Plaintiff for engaging in protected activities, when complaining and/or threatening to complain about Defendants' safety violations that jeopardized the health and safety of workers and guests that accessed Defendants' premises and which actually resulted in physical injuries to, among others, Plaintiff.

194.    Defendants' retaliatory actions were continuous from the time Plaintiff made the complaints until and including the time of her unlawful and unjustified termination.

195.    As a result of Defendants' aforementioned conduct, Plaintiff has suffered, and continues to suffer, loss of past and future wages and benefits, mental anguish, severe emotional distress, loss of enjoyment of life, and other monetary damages connected with Defendants' aforementioned violations.

196.    Plaintiff continues to suffer and to incur additional damages by reason of the foregoing.

197.    As a result of the outrageous and blatantly retaliatory conduct of Defendants, with such conduct that contravenes public policies and statutes, Plaintiff is entitled to punitive damages.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all questions of fact raised by this Action.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Yajaira Velazquez prays that this Court:

A.    Issue a declaratory judgment declaring that the acts and practices complained of herein are in violation of the FLSA, NYLL, New York Whistleblower Act, the Executive Law, and the Administrative Code;

B.    Designation of this action as a collective action on behalf of the FLSA Collective and prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of the FLSA Collective apprising them of the pendency of this action by filing individual consent forms pursuant to 29 U.S.C. § 216(b);

C.    That Plaintiff and the FLSA Collective be determined and adjudicated as non-exempt employees of each Defendant under the FLSA and NYLL;

D.    That the practices of Defendants be determined and adjudicated as violations of the FLSA and NYLL;

30

E.      That the practices of Defendants constitute willful violations of the FLSA and NYLL;

F.      Judgment against Defendants for an amount equal to Plaintiff and the FLSA Collective's unpaid wages pursuant to the FLSA and NYLL;

G.      An award of liquidated and punitive damages as a result of Defendants' willful violations of the FLSA and NYLL;

H.      An award of interest, costs, and attorney's fees, and all other relief available under the FLSA and NYLL;

I.      Leave to add additional plaintiffs or claims by motion, the filing of written consent forms, or any other method approved by the Court;

J.      An award of unpaid overtime compensation due under the FLSA and the NYLL;

K.      Award Plaintiff statutory penalties, equitable relief of back pay, salary and fringe benefits in an exact amount to be determined at trial;

L.      Award Plaintiff full compensation damages under Executive Law of the State of New York, New York State Human Rights Law ("Executive Law"), § 296, *et seq.*, and the Administrative Code of the City of New York, New York City Human Rights Law ("Administrative Code"), § 8-101, *et seq.*;

M.      Award full liquidated and punitive damages as allowed under Executive Law of the State of New York, New York State Human Rights Law ("Executive Law"), § 296, *et seq.*, and the Administrative Code of the City of New York, New York City Human Rights Law ("Administrative Code"), § 8-101, *et seq.*;

N.      Award full liquidated and punitive damages as allowed under New York Whistleblower Act, Labor Law § 740, *et seq.*;

O.      Award pre-judgment and post-judgment interests;

P.      Award Plaintiff an amount to be determined at trial of lost compensation, benefits, back-pay, bonuses, raises, emotional distress damages, and additional amounts such as liquidated damages;

Q.      Award Plaintiff such compensatory, prospective, exemplary and punitive damages as this Court deems appropriate, just and proper;

R.      Award Plaintiff the cost of prosecuting this action and for reasonable attorneys' fees under the aforementioned statutes;

S.      Enjoining Defendants from further misclassification, discrimination and retaliation, payment of lost and withheld compensation, back-pay, emotional distress damages, additional amounts such as liquidated damages; and

T.      Such other and further relief as this Court deems just and proper.

Dated: New York, New York
      February 2, 2017

Respectfully Submitted,

LAW OFFICE OF RUDY A. DERMESROPIAN, LLC

By: ____s/ Rudy A. Dermesropian_____
      Rudy A. Dermesropian (RD 8117)
      45 Broadway, Suite 1420
      New York, NY 10006
      Telephone: (646) 586-9030
      Fax: (646) 586-9005

      *Attorneys for Plaintiff*