**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

YAJAIRA VELAZQUEZ, on behalf of herself
and FLSA Collective Plaintiffs,

                    Plaintiff,

       v.

YOH SERVICES, LLC, CNBC, INC., CNBC,
LLC, NBCUNIVERSAL MEDIA, LLC,
BRENDA GUZMAN, individually and in her
official capacity, MARY DUFFY, individually
and in her official capacity, JOHN AND JANE
DOES 1-10, individually and in their official
capacities, XYZ CORP. 1-10,

                  Defendants.

Civil Action No.  1:17-cv-00842

---

### MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO ENFORCE SETTLEMENT AGREEMENT AND FOR ATTORNEYS' FEES

MORGAN, LEWIS & BOCKIUS LLP
Sam S. Shaulson
101 Park Avenue
New York, NY 10178
Tel:  (212) 309-6000
Fax: (212) 309-6001
sam.shaulson@morganlewis.com

Michael J. Puma
Eric C. Kim
1701 Market Street
Philadelphia, PA 19103
Tel:  (215) 963-5000
Fax:  (215) 963-5001

*Attorneys for Defendants CNBC, LLC, (f/k/a
CNBC, Inc.), NBCUniversal Media, LLC,
Brenda Guzman, and Mary Duffy*

LITTLER MENDELSON, P.C.
Kimberly J. Gost
Paul C. Lantis
Three Parkway
1601 Cherry St., Suite 1400
Philadelphia, PA 19102
Tel:  267.402.3007
kgost@littler.com

Maria Caceres-Boneau
900 Third Avenue
New York, NY 10022
Tel:  212.497.6853
mboneau@littler.com

*Attorneys for Defendant Yoh Services, LLC*

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ................................................................................................1

II.   RELEVANT FACTUAL BACKGROUND ........................................................2

III.   ARGUMENT ......................................................................................................4

    A.    The Settlement Is A Binding Contract And Should Be Enforced By The Court ..................................................................................................................4

        1.    There Is No Express Reservation Not To Be Bound .................................6

        2.    The Parties Have Already Begun Performing the Terms of the Agreement ................................................................................................7

        3.    The Parties Have Agreed To All Terms Of The Settlement.....................8

        4.    The Terms Of The Agreement Are Not Complex, And The Parties Memorialized The Agreement In Writing ...............................................9

    B.    Plaintiff's Attempts To Back Out Of The Settlement Are Frivolous .................10

    C.    Defendants Should Be Awarded Their Attorney's Fees Arising From Enforcement Of The Settlement Agreement Pursuant to 29 U.S.C. § 1927 And The Court's Inherent Authority ...................................................................12

IV.   CONCLUSION .................................................................................................13

# TABLE OF AUTHORITIES

**Page(s)**

CASES

Adjustrite Sys., Inc. v. GAB Bus. Servs., Inc.,
  145 F.3d 543 (2d Cir. 1998) ................................................................... 6

Arcadian Phosphates, Inc. v. Arcadian Corp.,
  884 F.2d 69 (2d Cir. 1989) ..................................................................... 6

Ciaramella v. Reader's Digest Ass'n, Inc.,
  131 F.3d 320 (2d Cir. 1997) ................................................................... 5

Conway v. Brooklyn Union Gas Co.,
  236 F. Supp. 2d 241 (S.D.N.Y. 2002) ................................................. 6, 8

Delyanis v. Dyna-Empire, Inc.,
  465 F. Supp. 2d 170 (E.D.N.Y. 2006) .............................................. 10, 11

Francis v. Home Box Office,
  No. 04-7430, 2005 WL 1020863 (S.D.N.Y. Apr. 28, 2005) .................... 6

Galanis v. Harmonie Club of City of N.Y.,
  No. 13-4344, 2014 WL 4928962 (S.D.N.Y. Oct. 2, 2014) ...................... 9

Hostcentric Techs., Inc. v. Republic Thunderbolt, LLC,
  No. 04-1621, 2005 WL 1377853 (S.D.N.Y. June 9, 2005) ............. passim

Meetings & Expositions, Inc. v. Tandy Corp.,
  490 F. 2d 714 (2d Cir. 1974) ................................................................. 4

Melwani v. Jain,
  No. 02-1224, 2004 WL 936814 (S.D.N.Y. Apr. 29, 2004) ...................... 7

Mone v. Park East Sports Medicine & Rehab., P.C.,
  No. 99-4999, 2001 WL 1518263 (S.D.N.Y. Nov. 29, 2001) ............... 7, 8

Moore v. Consol. Edison Co. of N.Y.,
  No. 00-7384, 2007 WL 2728657 (S.D.N.Y. Sept. 19, 2007) ................. 11

Pereira v. Sonia Holdings (In re Artha Mgmt.),
  91 F.3d 326 (2d Cir. 1996) ................................................................... 11

Powell v. Omnicom,
  497 F.3d 124 (2d Cir. 2007) ............................................................... 1, 8

Rabin v. Dow Jones & Co., Inc.,
  665 F. App'x 21 (2d Cir. 2016) ............................................................ 12

## TABLE OF AUTHORITIES

**Page(s)**

Rahman v. Kaplan Cornelia, Inc.,
   No. 12-09095 SN, 2014 WL 541851 (S.D.N.Y. Feb. 11, 2014) ...................................7, 9, 10

Red Ball Interior Demolition Corp. v. Palmadessa,
   173 F.3d 481 (2d Cir. 1999) ..........................................................................................4

Register.Com, Inc. v. Verio, Inc.,
   356 F.3d 393 (2d Cir. 2004) ..........................................................................................5

Scheinmann v. Dykstra,
   No. 16-5446, 2017 WL 1422972 (S.D.N.Y. Apr. 21, 2017) ...................................9

Stevens v. Publicis, S.A.,
   50 A.D.3d 253, 854 N.Y.S.2d 690 (N.Y. App. Div. 2008) ...................................10

Sullivan v. Ruvoldt,
   No. 16-583, 2017 WL 1157150 (S.D.N.Y. Mar. 27, 2017)...................................10

Winston v. Mediafare Entm't Corp.,
   777 F.2d 78 (2d Cir. 1985) .......................................................................5, 6, 7, 9

**STATUTES**

29 U.S.C. § 631 ..............................................................................................................4

29 U.S.C. § 1927 .......................................................................................................1, 11

## I.   <u>INTRODUCTION</u>

Defendants NBCUniversal Media, LLC, CNBC, LLC (f/k/a CNBC, Inc.) (collectively, "CNBC") and Yoh Services, LLC ("Yoh") seek to enforce a simple settlement agreement with Plaintiff Yajaira Velazquez ("Plaintiff").  The facts are straightforward.  After nearly a week of extensive, arms-length negotiations - including an in-person meeting attended by Ms. Velazquez, her counsel and defendants' counsel - and on the eve of Plaintiff's deadline to move for conditional certification, counsel for the parties reached an agreement to settle Plaintiff's claims that is memorialized in writing by email.  Less than two weeks later, Plaintiff retained new counsel who indicated that Plaintiff does not intend to abide by the parties agreed-upon settlement.

Under binding Second Circuit precedent, courts in this jurisdiction routinely enforce oral settlements confirmed by email when, as here, (1) the parties did not expressly reserve the right to be bound by only a formal settlement agreement, (2) the parties agreed to all material terms of the settlement, (3) the parties relied on the settlement to stop pursuing litigation, and (4) the settlement agreement is not complex, such that a formal written agreement is necessary.

Moreover, pursuant to 29 U.S.C. § 1927 and the Court's inherent authority, an award of attorneys' fees is appropriate here because Defendants have given Plaintiff's counsel ample notice and opportunity to avoid this Motion and abide by the settlement, but Plaintiff and her counsel have chosen not to do so.  Instead, they have raised frivolous arguments to claim that the settlement is not valid.  Indeed, Plaintiff's counsel claimed that Plaintiff had the right to revoke the agreement under the Age Discrimination in Employment Act, even though she was less than forty years old at the time her relationship with Defendants ended.

1

For these reasons, which are explained further below, Defendants respectfully request that the Court grant this Motion to Enforce the Settlement and order Plaintiff and/or her new counsel to pay Defendants' attorneys' fees incurred as a result of Plaintiff's purported repudiation of the settlement.

## II.   <u>RELEVANT FACTUAL BACKGROUND</u>

Plaintiff filed her Complaint on February 3, 2017, raising primarily individual discrimination and retaliation claims but also asserting putative collective action claims under New York state wage and hour laws and the Fair Labor Standards Act.  Defendants filed their answers on April 17, 2017.  On May 8, 2017, the Court held an initial case management conference, observed that the FLSA claim appeared to be "the tail wagging the dog" in Plaintiff's complaint, and issued a scheduling order requiring Plaintiff to file any motion for conditional certification of her FLSA claim by May 19, 2017.

The parties met in person with their counsel on May 16, 2017 to discuss the possibility of settling this lawsuit.  Declaration of Sam S. Shaulson, Esq. ("Shaulson Decl.") at ¶ 2.  During that meeting, Plaintiff made an initial settlement demand, which Defendants declined, but the parties agreed to continue settlement discussions through counsel.  <u>Id.</u>  After exchanging several counteroffers and engaging in extensive negotiations, the parties reached an agreement to settle the case on the evening of May 19, 2017.  <u>Id.</u> at ¶¶ 3-4.  Then, upon reviewing the material terms of the settlement and stating expressly that an agreement had been reached, CNBC's counsel of record, Sam Shaulson (with consent from Yoh's counsel of record), and Plaintiff's counsel of record, Rudy Dermesropian, agreed to memorialize the parties' agreement in an email confirming all of the agreed upon terms of the settlement.  That email states as follows:

Rudy,

This email is to confirm that the parties have reached an agreement to resolve all claims in this action for ███████████ with the settlement paid to Plaintiff as W2 wages, except for a reasonable portion paid as attorneys' fees and costs. The agreement includes a full general release of all Defendants and affiliates, and non-monetary terms such as strict confidentiality regarding the terms, fact, and negotiations of settlement, Plaintiff's cooperation with the withdrawal of her claims, confidentiality, and release of claims, no encouragement of others to sue, non-admission of liability by Defendants, no future employment or contracting for services with Defendants, and agreement that any dispute regarding the settlement is to be resolved through arbitration in NY. Plaintiff's counsel will also acknowledge that he has no other clients seeking to sue defendants, and no knowledge of other putative class or collective members seeking to sue defendants. We will get you a draft settlement agreement hopefully next week.

Thanks for your professionalism in resolving this matter.

Sam

Id. at ¶ 4, Exhibit 1. Mr. Dermesropian responded to this email by saying "I look forward to your draft. Thank you." Id.

Consistent with Plaintiff's agreement to settle this case, she did not file her motion for conditional certification by the Court's May 19, 2017 deadline. Plaintiff also did not respond to the discovery requests Yoh served on May 5, 2017 by her deadline to do so. On May 24, 2017, CNBC withdrew its letter-motion seeking to compel Plaintiff's deposition consistent with the parties' settlement.

Plaintiff then apparently retained new counsel, Ambrose Wotorson, who entered an appearance on June 2, 2017. That day, Mr. Shaulson spoke to Mr. Dermesropian to ask about Mr. Wotorson's appearance. Id. at ¶ 6. Mr. Dermesropian confirmed that the parties had reached a settlement and that he had authority to settle the case on behalf of Plaintiff. Id. Mr. Shaulson then contacted Mr. Wotorson and informed him that the parties had settled this lawsuit, but Mr. Wotorson stated that Plaintiff intended to abandon the parties' settlement and amend her

3

Complaint.  Id. at ¶ 6.  Specifically, Mr. Wotorson stated that Plaintiff had the right to revoke her

settlement agreement pursuant to the Age Discrimination in Employment Act ("ADEA").  Id.

This is true even though Plaintiff was less than forty years old at the time she ended her

relationship with Defendants and therefore is ineligible to assert an ADEA claim.  See 29 U.S.C.

§ 631.

   Given that Plaintiff and Mr. Wotorson's position has no merit, Mr. Shaulson sent Mr.

Wotorson an email on June 6, 2017, stating that Defendants will seek enforcement of the

settlement if Plaintiff chooses to breach the agreement.  Id. at ¶ 7, Exhibit 2.  Mr. Wotorson

responded on June 7, 2017, reiterating that Plaintiff does not intend to abide by the settlement

and plans to amend the Complaint.  Id.  Perhaps recognizing that his ADEA argument is

frivolous, Mr. Wotorson also claimed that Plaintiff never gave Mr. Desmeropian authority to

settle the case.  Id.  Ultimately, Defendants gave Plaintiff until June 16, 2017 to reconsider her

position and affirm the settlement agreement, but she did not respond.  Id. at ¶ 8, Exhibit 3.

## III. <u>ARGUMENT</u>

  A. **The Settlement Is A Binding Contract And Should Be Enforced By The Court.**

   The parties reached an agreement on all terms to settle this lawsuit, and Plaintiff cannot

walk away from that agreement.  "A district court has the power to enforce summarily, on

motion, a settlement agreement reached in a case that was pending before it."  <u>Meetings &</u>

<u>Expositions, Inc. v. Tandy Corp.</u>, 490 F. 2d 714, 717 (2d Cir. 1974) (citations omitted).  It is

black-letter law that "[s]ettlement agreements are contracts and must therefore be construed

according to general principles of contract law."  <u>Red Ball Interior Demolition Corp. v.</u>

<u>Palmadessa</u>, 173 F.3d 481, 484 (2d Cir. 1999).  Once entered into, a settlement agreement is

binding and conclusive and a party may not simply revoke her consent to that agreement.  <u>See,</u>

e.g., Hostcentric Techs., Inc. v. Republic Thunderbolt, LLC, No. 04-1621, 2005 WL 1377853, at

*4 (S.D.N.Y. June 9, 2005) ("[O]nce reached, a settlement agreement constitutes a contract that

is binding and conclusive and the parties are bound to the terms of the contract even if a party

has a change of heart between the time of the agreement to the terms of the settlement and the

time it is reduced to writing.") (citations omitted).

     "To form a valid contract under New York law, there must be an offer, acceptance,

consideration, mutual assent and intent to be bound." Register.Com, Inc. v. Verio, Inc., 356 F.3d

393, 427 (2d Cir. 2004) (citations omitted).  Applying New York law, the Second Circuit has

articulated a four-factor test to determine whether parties intended to be bound by a settlement

agreement in the absence of a "formal" written agreement.  See Winston v. Mediafare Entm't

Corp., 777 F.2d 78, 80 (2d Cir. 1985).  Specifically, the Second Circuit has held that courts

should consider:

> (1) whether there has been an express reservation of the right not to be bound in
> the absence of a signed writing;
>
> (2) whether there has been partial performance of the contract;
>
> (3) whether all of the terms of the alleged contract have been agreed upon; and
>
> (4) whether the agreement at issue is the type of contract that is usually committed
> to writing.

Ciaramella v. Reader's Digest Ass'n, Inc., 131 F.3d 320, 323 (2d Cir. 1997) (citing Winston, 777

F.2d at 80). "No single factor is decisive, but each provides significant guidance." Id.

     In the present case, it is beyond dispute that the parties engaged in extensive negotiations

and exchanged several offers and counteroffers before reaching an oral settlement agreement that

is memorialized in writing.  Shaulson Decl. ¶¶ 2-4.  Moreover, under the <u>Winston</u> factors, it is clear that the parties intended to be bound by the settlement.[1]

### 1.   **There Is No Express Reservation Not To Be Bound.**

The Second Circuit has repeatedly affirmed that "[t]he first factor, the language of agreement, is most important." <u>Adjustrite Sys., Inc. v. GAB Bus. Servs., Inc.</u>, 145 F.3d 543, 549 (2d Cir. 1998) (internal quotation marks omitted); <u>see also</u> <u>Arcadian Phosphates, Inc. v. Arcadian Corp.</u>, 884 F.2d 69, 72 (2d Cir. 1989) (same). "Parties satisfy the first element of the <u>Winston</u> test when there has been no express reservation and when other circumstances and actions of the parties indicate no reservation of the right not to be bound outside of a final written agreement." <u>Conway v. Brooklyn Union Gas Co.</u>, 236 F. Supp. 2d 241, 249 (S.D.N.Y. 2002).

Here, there is no evidence of an express reservation of the right not to be bound until the parties sign a more formal settlement agreement.  To the contrary, the parties specifically discussed all the material terms of the settlement, they agreed to the settlement, and they reduced their agreement to writing in an email. Moreover, Plaintiff's counsel further confirmed that the parties reached a final and binding settlement when new counsel entered an appearance.  <u>See</u> Shaulson Decl. ¶ 6.

Courts in this jurisdiction have enforced settlement agreements under similar circumstances, holding that a verbal agreement is enforceable even if it is never consummated in a planned writing.  <u>See</u> <u>Winston</u>, 777 F.2d at 80 ("[T]he mere intention to commit an agreement to writing will not prevent contract formation prior to execution.") (citations omitted)); <u>Francis v.</u>

---

[1] The Second Circuit has pointed out that a party need not meet all four factors, if the majority of the factors favor enforcement. <u>See, e.g.</u>, <u>Powell v. Omnicom</u>, 497 F.3d 124, 131 (2d Cir. 2007) ("Consequently, at least three of the four factors favor the conclusion that the parties intended to be bound in the absence of a writing. We therefore conclude that [plaintiff] was bound by the in-court, oral settlement.").

Home Box Office, No. 04-7430, 2005 WL 1020863, at *4 (S.D.N.Y. Apr. 28, 2005) ("The intent

to reduce a valid oral settlement agreement to writing, however, does not prevent that oral

agreement from being enforced.").  For example, in Hostcentric, the court enforced a settlement

agreement where the parties exchanged emails containing the agreement's material terms, even

though the emails indicated that the parties were preparing a "formal" settlement agreement.

2005 WL 1377853, at *4; see also Rahman v. Kaplan Cornelia, Inc., No. 12-09095 SN, 2014

WL 541851, at *4 (S.D.N.Y. Feb. 11, 2014) ("'Preliminary agreements' that address all

negotiated terms are enforceable, even if they are oral, or written in an email, and even if they

contemplate a subsequent memorialization in an executed document.") (internal citations

omitted); Melwani v. Jain, No. 02-1224, 2004 WL 936814, at *5 (S.D.N.Y. Apr. 29, 2004)

(enforcing settlement agreement because, in part, "no party to the settlement expressed any

reservation on the record of a right not to be bound absent an executed agreement"); Mone v.

Park East Sports Medicine & Rehab., P.C., No. 99-4999, 2001 WL 1518263, at *3 (S.D.N.Y.

Nov. 29, 2001) (enforcing settlement agreement despite party's attempted revocation where

neither party reserved their right to be bound).  In sum, the first and most important Winston

factor favors enforcement of the settlement.

> 2. **The Parties Have Already Begun Performing the Terms of the Agreement.**

The second Winston factor, whether the parties have begun performing the terms of their

agreement, also favors enforcement.  Courts have found evidence of partial performance of a

settlement when a party ceases to litigate an action or gives up her right to pursue certain relief.

See Mone, 2001 WL 1518263, at *3 (granting motion to enforce settlement agreement and

holding that "[a]s to the second factor, there was partial performance of the agreement in the

sense that plaintiff gave up her right to the imminent firm trial date").

7

Here, Plaintiff had a deadline to file a motion for conditional certification by May 19, 2017, but she choose not to pursue that motion after the parties reached a settlement agreement that same evening.  Plaintiff's counsel confirmed that the motion was drafted, but she simply did not file it because the case was over.  Shaulson Decl. ¶ 5.  Moreover, Plaintiff's responses to the requests for production of documents served by Yoh on May 5, 2017 were due on June 5, 2017.  Yet, she has not produced any documents in response to those requests; thus, waiving any objections to those requests and further evidencing her intent to settle this lawsuit.  Likewise, on May 24, 2017, CNBC withdrew its letter-motion seeking to compel Plaintiff's deposition in reliance on the parties' settlement agreement and also stopped pursuing litigation.  Thus, the actions of all parties demonstrate their mutual intent to be bound by the settlement.

### 3.      The Parties Have Agreed To All Terms Of The Settlement.

The third factor, whether the parties have agreed to all of the terms of their agreement, is similarly decisive.  Courts in this jurisdiction have held that "[t]he fact that there was agreement to each term of the settlement and that the parties recognized there were no additional terms remaining to be negotiated, weighs heavily in favor of enforcement."  Conway, 236 F. Supp. 2d at 251.  That is precisely the case here.

As mentioned above, the parties discussed all of the material terms of the settlement at length and, after reaching an agreement on those terms, Defendants sent an email that confirms the settlement and describes in detail all of its terms.  The email does not contemplate any further terms to negotiate.  Under analogous circumstances, courts have regularly enforced settlement agreements.  See, e.g., Powell, 497 F.3d at 130 (affirming enforcement of settlement agreement where "the parties agreed to all of the material terms of the settlement agreement"); Mone, 2001 WL 1518263, at *3 (enforcing settlement agreement because, in relevant part, "the parties had

agreed upon all of the material terms of the contract"); <u>see also</u> <u>Hostcentric</u>, 2005 WL 1377853, at

*9; (enforcing settlement agreement because, in relevant part, "in this case there was a writing –

[defendants'] email (and [plaintiff's] email accepting [defendants'] proposal without change")).

> 4.   **The Terms Of The Agreement Are Not Complex, And The Parties Memorialized The Agreement In Writing.**

The fourth <u>Winston</u> factor is whether the agreement is the type of contract usually

committed to writing.  <u>Winston</u>, 777 F.2d at 80.  Stated more precisely, "the correct question is

whether the settlement agreement terms are sufficiently complex or involve long time periods,

such that there should be a formal writing."  <u>Hostcentric</u>, 2005 WL 1377853, at *9; <u>see also</u>

<u>Scheinmann v. Dykstra</u>, No. 16-5446, 2017 WL 1422972, at *4 (S.D.N.Y. Apr. 21, 2017)

(enforcing settlement pursuant to <u>Winston</u> factors) (citations omitted).  This factor also weighs in

favor of Defendants, for two reasons.

First, the terms of the settlement agreement are not complex.  The parties reached a

straightforward agreement for Defendants to pay Plaintiff a sum of money in exchange for her

agreement to dismiss the lawsuit and release claims against Defendants.  Thus, this is not a

complex agreement that involves business transactions or specific performance obligations for a

prolonged period of time.  <u>See, e.g.</u>, <u>Rahman</u>, 2014 WL 541851, at *7 (holding that agreement to

settle overtime claims under the FLSA is not sufficiently complex for purposes of the fourth

<u>Winston</u> factor); <u>Galanis v. Harmonie Club of City of N.Y.</u>, No. 13-4344, 2014 WL 4928962, at

*11 (S.D.N.Y. Oct. 2, 2014) (enforcing settlement pursuant to the <u>Winston</u> factors and holding

that "the agreement involves straightforward and fairly standard terms, such as Defendants'

provision of a lump sum payment, Galanis's dismissal of his claims and provision of a release,

and confidentiality and non-disparagement provisions").

Second, the parties did in fact commit the settlement agreement to writing via email, and a more formal written agreement is not necessary to create a binding contract.  Courts in this jurisdiction frequently enforce both oral settlement agreements and settlement agreements contained in emails.  See, e.g., Scheinmann, 2017 WL 1422972, at *3 (enforcing settlement agreement contained in exchange of emails, holding that "[t]he parties' emails show that they reached a mutual agreement to settle the case following an offer, acceptance, consideration, mutual assent and intent to be bound");  Sullivan v. Ruvoldt, No. 16-583, 2017 WL 1157150 at *6 (S.D.N.Y. Mar. 27, 2017) ("An exchange of emails may constitute an enforceable agreement if the writings include all of the agreement's essential terms, including the fee, or other cost, involved.") (citations omitted); Rahman, 2014 WL 541851, at * 4 (noting that settlement agreements addressing all terms are enforceable if contained in an email); Hostcentric, 2005 WL 1377853, at *4 (enforcing settlement agreement because, in relevant part, the parties exchanged emails containing all material terms); Delyanis v. Dyna-Empire, Inc., 465 F. Supp. 2d 170, 175 (E.D.N.Y. 2006), (enforcing oral settlement agreement where parties sent "email to the mediator and Defendants' counsel, Ms. Lim affirmatively stated that the case was settled and that the mediator could inform the Court of the settlement"); Stevens v. Publicis, S.A., 50 A.D.3d 253, 255, 854 N.Y.S.2d 690 (N.Y. App. Div. 2008) (holding that parties formed binding employment agreement through exchange of emails).

B.     **Plaintiff's Attempts To Back Out Of The Settlement Are Frivolous.**

Plaintiff's new counsel, Mr. Wotorson, first claimed that Plaintiff could revoke the settlement agreement pursuant to the ADEA, which is a baseless argument because Plaintiff was not over forty years old and, therefore, was not covered by the ADEA at the time of her employment/assignment with Defendants.  Then, Mr. Wotorson claimed that Plaintiff never gave

10

Mr. Dermesropian authority to settle the dispute.  Shaulson Decl. ¶ 7.  That assertion is both false

and, in light of Mr. Dermesropian's actual and apparent authority, immaterial.

Plaintiff attended the in-person meeting between the parties on May 16, 2017, in which

she gave Mr. Dermesropian authority to negotiate a settlement.  Id. ¶ 2.  Thereafter, Mr.

Dermesropian gave no indication that he was negotiating for a settlement without Plaintiff's

consent.  On the contrary, Mr. Dermesropian told Mr. Shaulson during their negotiations that

Plaintiff was aware of each counteroffer by Defendants.  Id. ¶ 3.  Mr. Dermesropian confirmed

that he had authority to settle for Plaintiff again when he spoke with Mr. Shaulson about Mr.

Wotorson's appearance on June 2, 2017.  Id. ¶ 6.

In any event, courts consistently have held that there is a presumption that attorneys have

apparent authority to settle a case for their client.  See, e.g., Pereira v. Sonia Holdings (In re

Artha Mgmt.), 91 F.3d 326, 329 (2d Cir. 1996) (holding that while "[i]t is axiomatic that the

decision to settle a case rests with the client," courts "presume that an attorney-of-record who

enters into a settlement agreement, purportedly on behalf of the client, had authority to do

so"); Moore v. Consol. Edison Co. of N.Y., No. 00-7384, 2007 WL 2728657, at *4 (S.D.N.Y.

Sept. 19, 2007) (enforcing settlement despite plaintiff's "after-the-fact claim that she did not

wholly authorize [her attorney] to [settle]"); Delyanis, 465 F. Supp. 2d at 175 175 (E.D.N.Y.

2006) (holding that attorney had authority to accept settlement on behalf of client).  Here, there is

no evidence to rebut the presumption.  To the contrary, all of the circumstances of the in-person

settlement meeting attended by Plaintiff and the negotiations between the parties' counsel

demonstrate that Mr. Dermesropian had not just apparent authority, but actual authority.

Accordingly, this Court should not indulge Plaintiff's convenient assertion that she did not give

Mr. Dermesropian authority to settle this case.

11

C.    **Defendants Should Be Awarded Their Attorney's Fees Arising From Enforcement Of The Settlement Agreement Pursuant to 29 U.S.C. § 1927 And The Court's Inherent Authority.**

Under 28 U.S.C. § 1927 and the Court's inherent authority, the Court may require any attorney "who so multiplies the proceedings in any case unreasonably and vexatiously . . . to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." Rabin v. Dow Jones & Co., Inc., 665 F. App'x 21, 23 (2d Cir. 2016) (affirming district court's decision to issue sanctions under Section 1927 and holding that the court has the "inherent power" to do so).

Here, sanctions are appropriate given that Plaintiff is attempting to back out of a settlement that her initial counsel (Mr. Dermesropian) negotiated and agreed to with her approval. Moreover, Plaintiff's new counsel (Mr. Wotorson) has presented frivolous arguments (such as the ADEA revocation right) in an attempt to invalidate the settlement, even though Plaintiff's initial counsel continues to affirm the validity of the settlement. Shaulson Decl. ¶¶ 4-6. Such unreasonable and vexatious conduct has forced Defendants to incur unnecessary fees and costs in connection with preparing this Motion and with having to continue litigating this case. Indeed, Defendants' purpose in entering the settlement was to avoid the costs of further litigation, and Plaintiff has deprived Defendants of the benefit of their bargain by refusing to abide by the settlement. Accordingly, in addition to enforcing the settlement, and to make Defendants whole, Defendants respectfully request that the Court order Plaintiff and/or her new counsel to compensate Defendants for the attorneys' fees that they have been forced to incur as a result of Plaintiff's purported repudiation of the settlement agreement, and that those attorneys' fees be deducted from the settlement amount.

12

## IV.     <u>CONCLUSION</u>

For the foregoing reasons, the Court should grant Defendants' Motion and issue an order providing that the terms of the aforementioned settlement agreement are enforceable, and that Plaintiff and/or her new counsel are responsible for paying Defendants' reasonable attorneys' fees incurred in connection with this Motion and the preceding communications demanding that Plaintiff abide by the agreement.

Dated: June 20, 2017
      New York, New York

Respectfully submitted,
MORGAN, LEWIS & BOCKIUS LLP

By:  <u>*/s/ Sam S. Shaulson*</u>
    Sam S. Shaulson
101 Park Avenue
New York, NY 10178
Tel:  (212) 309-6000
Fax: (212) 309-6001
sam.shaulson@morganlewis.com

Michael J. Puma
Eric C. Kim
1701 Market Street
Philadelphia, PA 19103
Tel:  (215) 963-5000
Fax:  (215) 963-5001

*Attorneys for Defendants CNBC, LLC, (f/k/a CNBC, Inc.), NBCUniversal Media, LLC, Brenda Guzman, and Mary Duffy*

LITTLER MENDELSON, P.C.
Kimberly J. Gost
Paul C. Lantis
Three Parkway
1601 Cherry St., Suite 1400
Philadelphia, PA 19102
Tel:  267.402.3007
kgost@littler.com

Maria Caceres-Boneau
900 Third Avenue

13

New York, NY 10022
Tel:  212.497.6853
mboneau@littler.com

*Attorneys for Defendant Yoh Services, LLC*

14