UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| YAJAIRA VELAZQUEZ, on behalf of herself and FLSA Collective Plaintiffs,<br><br>                                    Plaintiff,<br><br>v.<br><br>YOH SERVICES, LLC, CNBC, INC., CNBC, LLC, NBCUNIVERSAL MEDIA, LLC, BRENDA GUZMAN, individually and in her official capacity, MARY DUFFY, individually and in her official capacity, JOHN AND JANE DOES 1-10, individually and in their official capacities, XYZ CORP. 1-10,<br><br>                                    Defendants. | Civil Action No.  1:17-cv-00842 |

## REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO ENFORCE SETTLEMENT AGREEMENT AND FOR ATTORNEYS' FEES

MORGAN, LEWIS & BOCKIUS LLP
Sam S. Shaulson
101 Park Avenue
New York, NY 10178
Tel:  (212) 309-6000
Fax: (212) 309-6001
sam.shaulson@morganlewis.com

Michael J. Puma
Eric C. Kim
1701 Market Street
Philadelphia, PA 19103
Tel:  (215) 963-5000
Fax:  (215) 963-5001

*Attorneys for Defendants CNBC, LLC, (f/k/a CNBC, Inc.), NBCUniversal Media, LLC, Brenda Guzman, and Mary Duffy*

LITTLER MENDELSON, P.C.
Kimberly J. Gost
Paul C. Lantis
Three Parkway
1601 Cherry St., Suite 1400
Philadelphia, PA 19102
Tel:  267.402.3007
kgost@littler.com

Maria Caceres-Boneau
900 Third Avenue
New York, NY 10022
Tel:  212.497.6853
mboneau@littler.com

*Attorneys for Defendant Yoh Services, LLC*

## **TABLE OF CONTENTS**

      **Page**

I. INTRODUCTION ..................................................................................................................1

II. ARGUMENT .........................................................................................................................2

    A. The Parties Reached An Enforceable Agreement to Settle This Lawsuit. ..............2

    B. Plaintiff's Latest Attempt To Challenge The Settlement Is Baseless......................3

    C. The Settlement Reached By The Parties Is Fair. .....................................................6

        1. The Settlement Amount Is Fair and Reasonable. .......................................6

        2. The Non-Monetary Terms Are Fair and Reasonable, Especially
Considering The Context of the Predominant Non-FLSA Claims.............7

    D. Defendants Should Be Awarded Their Attorney's Fees Arising From
Enforcement Of The Settlement Agreement. ..........................................................9

III. CONCLUSION ....................................................................................................................10

# TABLE OF AUTHORITIES

Page(s)

**CASES**

Beckert v. Ronirubinov,
    No. 15-1951, 2015 WL 8773460 (S.D.N.Y. Dec. 14, 2015) ...................................................... 6

Boyle v. Robert M. Spano Plumbing & Heating, Inc.,
    No. 15-2899, 2016 WL 1688014 (S.D.N.Y. Apr. 27, 2016) ................................................. 6, 7

Cheeks v. Freeport Pancake House, Inc.,
    796 F.3d 199 (2d Cir. 2015) ............................................................................................ 5, 8, 9

Jarvis v. City Elec. Supply Co.,
    No. 11-1590, 2012 WL 933057 (M.D. Fla. Mar. 5, 2012) ........................................................ 4

Johnson v. Equinox Holdings, Inc.,
    No. 13–6313, 2014 WL 3058438 (S.D.N.Y. July 2, 2014) ....................................................... 7

Kaiaokamalie v. Matson Terminals, Inc.,
    No. 13-00383, 2016 WL 7476336 (D. Haw. Dec. 29, 2016) .................................................... 8

Lola v. Skadden, Arps, Meagher, Slate & Flom LLP,
    No. 13-5008, 2016 WL 922223 (S.D.N.Y. Feb. 3, 2016) ......................................................... 8

Lopez v. Nights of Cabiria, LLC,
    96 F. Supp. 3d 170 (S.D.N.Y. 2015) ......................................................................................... 8

Lopez v. XTEL Const. Grp., LLC,
    796 F. Supp. 2d 693 (D. Md. 2011) ...................................................................................... 5, 8

Lytle v. King's Construction Co.,
    No. 14-288, 2015 WL 12856450 (N.D. Ga. July 30, 2015) ...................................................... 4

Mena v. Migar Corp., et al.,
    No. 15-22324, 2015 U.S. Dist. LEXIS 130181 (S.D. Fla Sept. 28, 2015) ................................ 5

Patel v. Barot,
    15 F. Supp. 3d 648 (E.D. Va. 2014) .......................................................................................... 4

Pucciarelli v. Lakeview Cars, Inc.,
    No. 16-4751, 2017 WL 2778029 (E.D.N.Y. June 26, 2017) ..................................................... 8

Rahman v. Kaplan Cornelia, Inc.,
    No. 12-09095 SN, 2014 WL 541851 (S.D.N.Y. Feb. 11, 2014) ............................................... 4

Samuel v. Bd. of Educ. of NYC,
   No. 12-4219, 2015 WL 10791896 (E.D.N.Y. Aug. 11, 2015), aff'd sub nom.
   668 F. App'x 381 (2d Cir. 2016) ...................................................................................... 2, 3

Villalva-Estrada v. SXB Rest. Corp., et al.,
   No. 14-10011, 2016 WL 1275663 (S.D.N.Y. Mar. 31, 2016) .................................................. 6

Winston v. Mediafare Entm't Corp.,
   777 F.2d 78 (2d Cir. 1985). Dkt. No. 41 at 4-10 ................................................................ 2, 4

Wolff v. Rare Medium, Inc.,
   65 F. App'x 736 (2d Cir. 2003) ................................................................................................ 9

**STATUTES**

29 U.S.C. § 1927 .............................................................................................................................. 2

ADEA ............................................................................................................................................... 9

FLSA ..........................................................................................................................................passim

I.      **INTRODUCTION**

Defendants' Opening Brief showed that, under binding Second Circuit precedent, the parties entered into an enforceable settlement agreement. Plaintiff's Opposition does not address – let alone challenge – any of the factors used to evaluate whether a settlement exists. Instead, Plaintiff ***admits that she agreed to settle this case*** but claims that the settlement is not enforceable because the parties have not yet sought Court approval of the settlement as a fair resolution of her FLSA claim. This argument places the cart before the horse and has no merit.

Before seeking approval of an FLSA settlement, the parties must first agree to settle. Thus, prior to addressing whether the settlement is fair, the Court must first determine whether an enforceable settlement agreement exists based on principles of contract formation. Here, Plaintiff concedes that she agreed to settle. That agreement required Plaintiff to release her claims and cooperate with Defendants to seek their dismissal. But before the parties could seek Court approval of the FLSA release, Plaintiff hired new counsel to renounce the agreement. Any arguments concerning the fairness of the settlement thus are premature. The Court should grant Defendants' Motion so that the parties can seek approval of the settlement and dismissal of the case.

If the Court accepts Plaintiff's invitation in her Opposition to evaluate the fairness of the FLSA release now, however, the settlement is more than fair. Even accepting the allegations in Plaintiff's affidavit as true – which they are not – the agreement would provide Plaintiff more than twice the amount she now claims in unpaid wages. And Plaintiff essentially concedes that she has no viable FLSA claim for damages: she alleges (falsely) that she consistently worked 7.5 hours more than the alleged 20-hour weekly limit imposed on her, at a pay rate of $50 per hour. Thus, she tacitly admits that she has no FLSA overtime claim because she did not work over 40 hours per week, and no FLSA minimum wage claim because she was paid much more than the applicable minimum wage of $7.25 per hour. As for Plaintiff's objections to the general release, no-hire, and

confidentiality provisions of the agreement, she ignores that her FLSA claim was just one of 11 claims, including discrimination and retaliation claims, that her relationship with Defendants ended because of her admitted absenteeism and lateness disqualifying her from rehire, and that the settlement terms already are before the Court and in the public record.

With regard to Defendants' request for attorneys' fees, Plaintiff and her new counsel acknowledge that they have attempted every which way to multiply these proceedings to get Plaintiff out of the deal she struck. And Plaintiff has materially changed her representations to the Court regarding her claims and purported damages in an effort to dodge her agreement, while conceding that she just had buyer's remorse. Such conduct is precisely what 29 U.S.C. § 1927 seeks to prevent. This Court should therefore grant Defendants' Motion and order Plaintiff and/or her new counsel to pay Defendants' fees and costs incurred from her purported repudiation of the settlement.

## II.    ARGUMENT

### A.    The Parties Reached An Enforceable Agreement to Settle This Lawsuit.

Defendants demonstrated in their Opening Brief that the parties reached an enforceable agreement to settle this lawsuit based on the factors outlined in Winston v. Mediafare Entm't Corp., 777 F.2d 78 (2d Cir. 1985). Dkt. No. 41 ("Defs. Br.") at 4-10. Plaintiff does not even attempt to address or challenge the Winston factors. To the contrary, Plaintiff's Opposition concedes that the parties reached an agreement.[1]  See, e.g., Dkt. No. 50 ("Pl. Br.") at 1-2 (admitting that her counsel, Mr. Dermesropian, "reached an 'agreement' with counsel Defendants" and that "soon after the parties reached this agreement, Plaintiff determined that she had been shortchanged under the

---

[1] Plaintiff's buyer's remorse is not grounds to invalidate the settlement.  See, e.g., Samuel v. Bd. of Educ. of NYC, No. 12-4219, 2015 WL 10791896, at *5 (E.D.N.Y. Aug. 11, 2015), aff'd sub nom. 668 F. App'x 381 (2d Cir. 2016) (enforcing oral settlement agreement never reduced to writing as intended, as the plaintiff's "buyer's remorse" is not grounds to invalidate the agreement).

settlement and retained new counsel"); id at 7 ("[T]he agreement in this case provides no details . . . ."); see also Dkt. No. 48 ("Wotorson Decl.") ¶ 9 (conceding that he "explored the possibility of advising [his] new client to simply accept the settlement. . . . in light of her counsel's apparent representation to defendants' counsels that she had consented to settlement, and her own, albeit ambiguous directions to her counsel, Mr. Dermesropian, regarding settlement"); Dkt. No. 54 ("Dermesropian Decl.") ¶¶ 6-28 (testifying that Plaintiff gave him authority to settle and explaining how the parties reached an agreement to settle).[2]  Simply put, Plaintiff's Opposition and the accompanying declarations confirm that she gave her counsel authority to settle and that counsel for the parties reached a meeting of the minds on a settlement agreement.[3]

> **B.      Plaintiff's Latest Attempt To Challenge The Settlement Is Baseless.**

Rather than challenging the formation of the settlement, Plaintiff now claims that the settlement is not enforceable because the parties have not yet sought Court approval of the resolution of her FLSA claim.  Pl. Br. at 2-5.  This argument fails for several reasons.

First, Plaintiff prematurely raises the issue of the settlement's fairness when only the enforceability of the settlement (i.e., whether a valid contract was formed) should be decided at this time.  It is common sense that the parties must first reach an agreement to settle before moving for court approval.  Here, Plaintiff admits that the parties reached an agreement to settle and that the

---

[2] Plaintiff confirms that she gave her counsel authority to settle and ultimately agreed to the settlement.  Specifically, she gave Mr. Dermesropian express authority to "do what [he] think[s] is right" as to settlement. Dkt. No. 49 ("Pl. Decl.") ¶ 20.  She then initially objected when Mr. Dermesropian informed Plaintiff that he will "try to settle the case for" the amount that ultimately was agreed, but Mr. Dermesropian "strongly advised" her to take the settlement. Id. ¶¶ 24-25. ***Plaintiff does not state that she continued to object to the settlement after she received this advice from Mr. Dermesropian.***  Instead, when Mr. Dermesropian next emailed her and stated that an agreement had been reached for that amount, as Plaintiff had "finally confirmed and authorized," Plaintiff replied by saying "thank you so much." Id. ¶ 26.

[3] To the extent that her declaration implies that Plaintiff pulled back her settlement authority (while certainly not expressly saying so), that allegation is immaterial because – as explained in Defendants' moving papers – Mr. Dermesropian had apparent authority to settle her claims.

terms of the agreement required "Plaintiff's cooperation with the withdrawal of her claims," including working with Defendants on dismissal of the case with prejudice. Pl. Br. at 1 (quoting the email memorializing the parties' agreement that Plaintiff admits she accepted). As there is no dispute that the parties agreed to settle, the Court should now allow a motion for approval of the settlement as contemplated in the agreement.

Second, Plaintiff should not be permitted to use Defendants' inability to date to seek Court approval as grounds for voiding the settlement, as she precluded the parties from seeking approval by hiring new counsel and trying to renounce the agreement. Under similar circumstances, courts in this jurisdiction and others have granted motions to enforce oral or unsigned settlements involving FLSA claims based on contract principles *before* separately addressing whether such settlements are fair and should be approved. See, e.g., Lytle v. King's Construction Co., No. 14-288, 2015 WL 12856450, at *5 (N.D. Ga. July 30, 2015) (enforcing FLSA settlement, holding that agreement was reached by e-mail; directing the parties to next address the fairness of the agreement, but noting that "this is not an invitation to relitigate the issue of whether a settlement was reached, or what the terms of such a settlement are"); Patel v. Barot, 15 F. Supp. 3d 648, 655-56 (E.D. Va. 2014) (approving FLSA settlement where plaintiff disputed existence of enforceable agreement, and separately addressing fairness; observing that "[e]ven though there is an enforceable settlement, the Court must still determine if the proposed settlement is proper under the FLSA"); Rahman v. Kaplan Cornelia, Inc., No. 12-09095 SN, 2014 WL 541851, at *4 (S.D.N.Y. Feb. 11, 2014) (enforcing oral settlement agreement involving FLSA claims based on Winston factors before addressing the separate issue of whether court approval was necessary); Jarvis v. City Elec. Supply Co., No. 11-1590, 2012 WL 933057 (M.D. Fla. Mar. 5, 2012) (enforcing FLSA settlement in part, based on a settlement through e-mails exchanging drafts, and separately addressing approval of agreement and fairness), report and recommendation adopted, 2012 WL 933023 (M.D. Fla. Mar.

20, 2012); Lopez v. XTEL Const. Grp., LLC, 796 F. Supp. 2d 693 (D. Md. 2011) (enforcing settlement of FLSA claim, holding that parties reached binding oral agreement at settlement conference during which magistrate judge stated that the terms of settlement was fair, and addressing the enforceability of the settlement under contract principles before separately addressing fairness).  These cases all demonstrate that FLSA settlements are not freely revocable prior to court approval.

Third, the case law cited by Plaintiff on this issue is inapposite.  In Cheeks v. Freeport Pancake House, Inc., 796 F.3d 199 (2d Cir. 2015), the parties agreed to a settlement to resolve the plaintiff's FLSA claims and stipulated to a dismissal of the action without seeking court approval. The Second Circuit affirmed the district court's decision not to dismiss the case, holding that "Rule 41(a)(1)(A)(ii) stipulated dismissals settling FLSA claims with prejudice require the approval of the district court or the DOL to take effect."  Id. at 203-206.  The enforceability of the settlement agreement, in terms of contract formation, was never at issue.  To the contrary, the court expressly distinguished the question of "whether a private FLSA settlement is enforceable" from the question at bar, namely "whether the parties can enter into a private stipulated dismissal of FLSA claims with prejudice, without the involvement of the district court or DOL, that may later be enforceable." *Id*. at 204 (emphasis added).  Moreover, the settlement here is consistent with the holding in Cheeks because it provides that the parties will cooperate in seeking approval and dismissal.

Mena v. Migar Corp., et al., No. 15-22324, 2015 U.S. Dist. LEXIS 130181 (S.D. Fla Sept. 28, 2015), is also inapt.  In Mena, the court declined to enforce the parties' settlement agreement that would dismiss the plaintiff's FLSA claims because the parties did not seek approval of the settlement.  Unlike here, however, the Mena defendants' email memorializing the oral settlement agreement did not include a term requiring the parties to cooperate on approval and dismissal. Mena, No. 15-22324, Dkt. No. 26 (S.D. Fla. Aug. 27, 2015).

### C.     The Settlement Reached By The Parties Is Fair.

To the extent that the Court accepts Plaintiff's invitation in her Opposition to address the fairness of the settlement now, the settlement is more than fair.  Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes and are "fair and reasonable."  See Boyle v. Robert M. Spano Plumbing & Heating, Inc., No. 15-2899, 2016 WL 1688014, at *5 (S.D.N.Y. Apr. 27, 2016).  "[T]here is generally a strong presumption in favor of finding a settlement fair, as the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement."  Id.

#### 1.     The Settlement Amount Is Fair and Reasonable.

Plaintiff is now claiming $29,250 in unpaid wages (Pl. Br. at 10).  Even if that were true and she were awarded liquidated (double) damages, her maximum recovery for her purported wage claims would be $58,500 – ***still less than what she is receiving from the settlement.***  Courts in this jurisdiction regularly approve FLSA settlements where plaintiffs received much smaller portions of their maximum possible recovery than Plaintiff would here.  See, e.g. Beckert v. Ronirubinov, No. 15-1951, 2015 WL 8773460, at *2 (S.D.N.Y. Dec. 14, 2015) (approving FLSA settlement of $29,557.97 out of maximum possible recovery of $114,700); Villalva-Estrada v. SXB Rest. Corp., et al., No. 14-10011, 2016 WL 1275663, at *3 (S.D.N.Y. Mar. 31, 2016) (approving settlement that "would allow [plaintiff] to receive 47% of his maximum possible recovery").  Moreover, Plaintiff admits that Mr. Dermesropian recognized the significant risk that she will not recover any amount for her claims and could in fact owe Defendants their costs if she loses on the merits.  Pl. Decl. ¶ 22.[4]

---

[4] Should the Court require more evidence on the merits of Plaintiff's FLSA claim in order to evaluate whether the settlement is fair, Defendants respectfully request that the Court order Plaintiff to produce all of the text messages, emails, notes, and other communications with Mr. Dermesropian.  She has waived her attorney-client privilege for those communications by describing them in her Declaration.  The communications will demonstrate that Defendants shared

-6-

This settlement is particularly fair given that even if all of Plaintiff's latest allegations in her Declaration were true – and they are not – her FLSA claim would be valueless because she would not be entitled to *any* damages under the FLSA.  Specifically, Plaintiff now claims that Defendants only paid her for 20 hours per week but that she worked around 7.5 additional, unpaid hours per week.  Pl. Decl. ¶¶ 3-7.  Plaintiff's alleged 27.5 hours of work per week does not come close to exceeding 40 hours per week, so she is not entitled to *any overtime damages*.  And Plaintiff would have no minimum wage claim even if she were not paid for 7.5 hours per week: her reported $50 hourly rate for her first 20 hours, totaling $1,000 per week, far exceeds the minimum wage, even if averaged across 27.5 total hours per week.  See, e.g., Johnson v. Equinox Holdings, Inc., No. 13–6313, 2014 WL 3058438, at *3 (S.D.N.Y. July 2, 2014).

Considering the "inherent time, cost, and risk savings," the settlement amount is more than "fair and reasonable."  Boyle, 2016 WL 1688014, *4.

### 2. The Non-Monetary Terms Are Fair and Reasonable, Especially Considering The Context of the Predominant Non-FLSA Claims.

Plaintiff's objections to the settlement's general release, no-rehire, and confidentiality provisions – all of which she and her counsel accepted – are baseless.  All of the case law in Plaintiff's Opposition concerning the "fairness" of these provisions involved cases with only FLSA or similar state law wage/hour claims.  Here, as acknowledged by the Court at the Rule 16 conference, most of the Complaint's allegations concern Plaintiff's individual discrimination and retaliation claims.  Thus, the decisions cited in Plaintiff's Opposition do not bar these provisions.

General release, no-rehire, and confidentiality provisions are typical for settlement of discrimination or retaliation claims.  Indeed, it is hard to imagine a scenario where defendants faced with 11 claims, including discrimination and harassment claims, would resolve the matter without a

---

information and documents with Mr. Dermesropian during the course of the parties' negotiations to highlight the significant weaknesses in Plaintiff's claims.

standard, general release of claims.  The no-rehire clause is particularly reasonable here given that Plaintiff was chronically late while providing services to Defendants.  For example, between June and July 2015, Plaintiff was over 15 minutes late for work approximately 30 out of 36 days she was scheduled.  Declaration of Michael J. Puma ("Puma Decl.") ¶ 2.  Documentary evidence establishes that Plaintiff did not show up on time on her last day of work, January 29, 2016, and this is why her assignment with CNBC was terminated.  Id. ¶ 4, Ex. 3.  Plaintiff sent emails apologizing for these issues – including after she was terminated.  Id. ¶ 5, Ex. 4.

With regard to the confidentiality provision, Plaintiff relies on Cheeks and Lopez v. Nights of Cabiria, LLC, 96 F. Supp. 3d 170 (S.D.N.Y. 2015).  Cheeks and Lopez did not address whether confidentiality provisions are prohibited in settlement of cases, like here, involving primarily discrimination and retaliation claims where confidentiality provisions are standard.  Nor did those opinions hold that confidentiality provisions are *per se* prohibited in FLSA settlements.  Courts in this jurisdiction have approved FLSA settlements that contained confidentiality provisions.  See, e.g., Lola v. Skadden, Arps, Meagher, Slate & Flom LLP, No. 13-5008, 2016 WL 922223, at *2 (S.D.N.Y. Feb. 3, 2016); Pucciarelli v. Lakeview Cars, Inc., No. 16-4751, 2017 WL 2778029, at *4 (E.D.N.Y. June 26, 2017) ("The Court finds that the confidentiality provision does not run afoul of the FLSA's remedial purposes.").  Finally, the reason Cheeks and Lopez disfavor confidentiality provisions in FLSA settlements is because such provisions can be inconsistent with "the right of access to judicial documents."  Lopez, 96 F. Supp. 3d at 178.  Here, no such concern exists because the parties have disclosed the terms of their settlement and they are available in the court record.

In sum, Plaintiff's challenge to the agreement's terms is just her latest attempt to dodge the settlement.  Even if the Court had an issue with any of the terms and believes modification of the settlement in Plaintiff's favor is appropriate, this would not give Plaintiff grounds to walk away from the deal.  E.g., Kaiaokamalie v. Matson Terminals, Inc., No. 13-00383, 2016 WL 7476336, at

*8 (D. Haw. Dec. 29, 2016) (approving FLSA settlement with modifications, ordering parties to confer on any additional payment for plaintiffs who objected to settlement, and noting that parties' term sheet was an enforceable contract where plaintiffs agreed to cooperate towards filing dismissal and approval papers).  Consistent with her obligation to consummate the settlement and cooperate in dismissing her claims, she would have a contractual obligation and a duty of good faith to seek approval of terms with a modified scope.  Wolff v. Rare Medium, Inc., 65 F. App'x 736, 738–39 (2d Cir. 2003) ("Under New York law, a duty of good faith and fair dealing is implicit in every contract[.]").

### D. Defendants Should Be Awarded Their Attorney's Fees Arising From Enforcement Of The Settlement Agreement.

While Plaintiff's initial counsel continues to affirm the validity of the settlement in a sworn Declaration, Plaintiff and her new counsel have unreasonably and vexatiously multiplied the proceedings by raising frivolous arguments to void the settlement and extend litigation.  Plaintiff's Opposition does not meaningfully address Defendants' request for attorneys' fees and, instead, simply states that sanctions are not appropriate because "the settlement agreement is not enforceable under Cheeks."  But Cheeks does not preclude enforcement of this settlement.  See supra at 3-5.

Plaintiff and her new counsel's argument based on Cheeks is the latest in a line of untenable positions they have raised.  First, Mr. Wotorson claimed that the ADEA's 7-day revocation period should apply to the settlement, but Plaintiff was under 40 years old at the time of her employment.  Mr. Wotorson now admits that he made that argument to Mr. Shaulson before even researching the issue and conferring with his co-counsel – wasting Defendants' time and then confirming that the ADEA did not apply.  Wotorson Decl. ¶¶ 8, 13.  Mr. Wotorson next asserted that Plaintiff did not give Mr. Dermesropian authority to settle.  Shaulson Decl. ¶ 7.  But now that false assertion is not even referenced in Plaintiff's Opposition, and Plaintiff's and Mr. Wotorson's declarations both confirm that Mr. Dermesropian did, in fact, have authority to settle.  See supra 2-3.  Instead,

Plaintiff and her new counsel now admit that she entered into a settlement with Defendants and simply has buyer's remorse. Id.

Plaintiff's inconsistent and evolving representations to the Court regarding her claims and purported damage further warrant sanctions. For example, Plaintiff now claims that Defendants did not pay her for any hours over 20 hours per week and instead "rolled over" all hours over 20 per week *for all 78 weeks that she worked*. Pl. Br. at 9; Pl. Decl. ¶¶ 3-7. She also claims that she worked approximately 7.5 additional hours per week during that entire period. Id. Those allegations are in stark contrast to her allegations in the Complaint, which state that for her first year she was scheduled to work over 40 hours per week and was properly paid 1.5 times her regular rate for all hours worked over 40. Complaint (Dkt. No. 1) ¶ 51. Thus, Plaintiff alleged in the Complaint that the supposed "roll over" policy existed only *after her first year*. Compl. ¶¶ 53-57. And the Complaint asserts that Defendants would "carry over" hours over *30 per week* rather than the *20 per week* now claimed in her declaration. Compl. ¶¶ 53-57.

## III. CONCLUSION

The Court should grant Defendants' Motion and issue an order providing that the terms of the settlement agreement are enforceable, and that Plaintiff and/or her new counsel are responsible for paying Defendants' reasonable attorneys' fees incurred in enforcing the settlement.

Dated: July 17, 2017
    New York, New York

Respectfully submitted,
MORGAN, LEWIS & BOCKIUS LLP

By: /s/ Sam S. Shaulson
    Sam S. Shaulson
101 Park Avenue
New York, NY 10178
Tel: (212) 309-6000
Fax: (212) 309-6001
sam.shaulson@morganlewis.com

## **CERTIFICATE OF SERVICE**

I hereby certify that I caused to be served, by ECF, a true and correct copy of Defendants NBCUniversal Media, LLC, CNBC, LLC (f/k/a CNBC, Inc.) (collectively, "CNBC") and Yoh Services, LLC ("Yoh") Reply In Support of Defendants' Motion to Enforce Settlement Agreement and for Attorneys' Fees, and Declaration of Michael J. Puma with accompanying exhibits on this 17th day of July, 2017, on:

Ambrose Wotorson, Jr., Esq.
Law Offices of Ambrose Wotorson, P.C.
26 Court Street, Suite 1811
New York, NY 11242

Rudy Dermesropian, Esq.
45 Broadway, Suite 1420
New York, NY 10006

/s/ Sam S. Shaulson
Sam S. Shaulson