UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x

YAJAIRA VELAZQUEZ, on behalf of herself
And FLSA Collective Plaintiffs,

                     Plaintiff,

   -against-

YOH SERVICES, LLC, CNBC, INC., CNBC,
LLC, NBCUNIVERSAL MEDIA, LLC,
BRENDA GUZMAN, individually and in her
Official capacity, MARY DUFFY, individually
and in her official capacity, JOHN AND JANE
DOES 1-10, individually and in their official
capacities, XYZ CORP. 1-10,

                     Defendants.

------------------------------------------------------------x

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 9/25/17
```

No. 17 Civ. 00842 (CM)

### DECISION AND ORDER DENYING DEFENDANTS' MOTION FOR ENFORCEMENT OF THE SETTLEMENT AGREEMENT AND DENYING DEFENDANTS' MOTION FOR ATTORNEYS' FEES

McMahon, C.J.:

    Defendants Yoh Services, LLC, CNBC, LLC, NBCUniversal Media, LLC, Brenda Guzman, and Mary Duffy (collectively, "Defendants") bring a motion to enforce an alleged settlement agreement with Plaintiff Yajaira Velazquez ("Plaintiff") and a motion for attorneys' fees for expenses incurred in enforcing the agreement.

    For the reasons set forth below, Defendants' motion to enforce the settlement agreement is DENIED and their motion for attorneys' fees is DENIED.

### BACKGROUND

    For purposes of this motion, the following facts are undisputed, unless otherwise noted.

    Plaintiff brought the underlying action on February 3, 2017, alleging violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq., the New York Whistleblower Act, the New York State and City Human Rights Laws, and the New York Labor Law. The Court held an

1

initial case management conference by telephone, on May 8, 2017, and issued a scheduling order that required Plaintiff to file any motion for conditional certification of her FLSA claim by May 19, 2017.

The parties and their counsel subsequently met on May 16, 2017 for settlement discussions. (Shaulson Decl. ¶ 2; Dermesropian Decl. ¶ 11.) The meeting ended with an understanding that the parties would continue settlement negotiations. (Shaulson Decl. ¶ 2; Dermesropian Decl. ¶ 11.)

On May 19, 2017, before Plaintiff's motion was due, the parties' counsel reached agreement. (Shaulson Decl. ¶ 4; Dermesropian Decl. ¶ 21.) Defendants' counsel, Sam S. Shaulson, Esq., sent Plaintiff's counsel, Rudy A. Dermesropian, Esq., the following confirmatory email at Mr. Dermesropian's request:

> This email is to confirm that the parties have reached an agreement to resolve all claims in this action for $67,250, with the settlement paid to Plaintiff as W2 wages, except for a reasonable portion paid as attorneys' fees and costs. The agreement includes a full general release of all Defendants and affiliates, and nonmonetary terms such as strict confidentiality regarding the terms, fact, and negotiations of settlement, Plaintiff's cooperation with the withdrawal of her claims, confidentiality, and release of claims, no encouragement of others to sue, non-admission of liability by Defendants, no future employment or contracting for services with Defendants, and agreement that any dispute regarding the settlement is to be resolved through arbitration in NY. Plaintiff's counsel will also acknowledge that he has no other clients seeking to sue defendants, and no knowledge of other putative class or collective members seeking to sue defendants. We will get you a draft settlement agreement hopefully next week.

(Shaulson Decl. ¶ 4; Ex. 1.) Mr. Dermesropian replied, "I look forward to your draft. Thank you." (Shaulson Decl. Ex. 1.)

Because the parties had an oral agreement, plaintiff did not file any motion for conditional class certification, which was due May 19, 2017, and also did not respond to Defendants' request for production of documents, which was due June 5, 2017. (Dermesropian Decl. ¶ 14–15, 18; Shaulson Decl. ¶ 6.) Defendants withdrew their letter-motion seeking to compel Plaintiff to be deposed on May 24, 2017.

On May 25, 2017, Plaintiff relieved Mr. Dermesropian and retained new counsel, who informed Defendants that Plaintiff would not abide by the settlement. (Shaulson Decl. ¶ 6.) As a result, Defendants filed the instant motion to enforce the agreement reached by Mr. Dermesropian.

## DISCUSSION

"A district court has the power to enforce summarily, on motion, a settlement agreement reached in a case that was pending before it." *BCM Dev., LLC v. Oprandy*, 490 F. App'x 409, 409 (2d Cir. 2013) (citation omitted). The party seeking to enforce the purported agreement bears the burden of proving that the parties entered into a binding agreement. *Grgurev v. Licul*, 2016 WL 6652741, at *3 (S.D.N.Y. Nov. 10, 2016). Settlement agreements are contracts and are interpreted according to general principles of contract law. *Powell*, 497 F.3d at 128.

The Second Circuit has declined to rule whether courts should apply federal or state law in determining the enforceability of settlement agreements. *See Figueroa v. N.Y.C. Dep't of Sanitation*, 475 F. App'x 365, 366 (2d Cir. 2012); *Powell v. Omnicom*, 497 F.3d 124, 129 n.1 (2d Cir. 2007). However, the Circuit has stated that New York and federal law on enforcing settlements are "materially indistinguishable." *Powell*, 497 F.3d at 129 n.1; *accord Ciaramella v. Reader's Digest Ass'n, Inc.*, 131 F.3d 320, 322 (2d Cir. 1997).

Application of both New York and federal law lead to the same outcome in this case.

### I. New York Law

The relevant New York statute, Civil Practice Law and Rules § 2104, provides, in pertinent part, that:

> An agreement between parties or their attorneys relating to any matter in an action, other than one made between counsel in open court, is not binding upon a party unless it is in a writing subscribed by him or his attorney or reduced to the form of an order and entered.

The New York Court of Appeals has emphasized that "§ 2104 should be construed strictly in accordance with its literal terms." *Massie v. Metro. Museum of Art*, 651 F. Supp. 2d 88, 97

3

(S.D.N.Y. 2009) (citing *Bonnette v. Long Island Coll. Hosp.*, 3 N.Y.3d 281, 285–86 (2004)); *accord Langreich v. Gruenbaum*, 775 F. Supp. 2d 630, 637 (S.D.N.Y. 2011).

Here, the purported settlement agreement does not meet the strict requirements of § 2104. The agreement was not made in open court, nor was it reduced to the form of an order and entered.

Defendants argue that Mr. Shaulson's confirmatory email was sufficient to constitute a writing. However, while "An exchange of emails may constitute an enforceable agreement" if it meets all the requirements of a contract, *Sullivan v. Ruvoldt*, 2017 WL 1157150, at *6 (S.D.N.Y. Mar. 27, 2015), Mr. Dermesropian never affirmatively accepted Mr. Shaulson's offer. Instead, he replied, "I look forward to your draft. Thank you." *Cf. Scheinman v. Dykstra*, 2017 WL 1422972, at *1, 5 n.8 (S.D.N.Y. Apr. 21, 2017) (finding that defendant's counsel accepted an email offer by responding, "We have a deal."). In fact, Mr. Dermesropian's response suggests that he anticipated further negotiation over the drafting of the written agreement.

The Second Circuit has held that there are "certain limited circumstances, a court may enforce a settlement agreement that does not comply with the requirements of Rule 2104." *Figueroa*, 475 F. App'x at 366 (citing *Bonnette v. Long Island Coll. Hosp.*, 3 N.Y.3d at 285). In *Figueroa*, the Second Circuit found that the settlement at issue constituted one of those "rare occasions" where strict compliance with § 2104 was not required. There, the Court was closely involved in the settlement discussions, having held several settlement conferences with the parties; the parties had declared to the Court that they reached a settlement and requested a hearing to confirm their understanding of its terms; counsel for both parties affirmed that a final settlement was reached; and, finally, the parties had actually finalized the settlement documents. *See id.*; *Figueroa v. City of New York*, 2011 WL 309061, at *2 (Feb. 1, 2011). None of those things occurred here.

4

Accordingly, the settlement is not enforceable under New York law.

## II. Federal Law

Applying federal law, I reach the same conclusion.

The Second Circuit has held that parties may enter into a binding settlement agreement orally, and "the intention to commit an agreement to writing, standing alone, will not prevent contract formation." *Powell*, 497 F.3d at 129 (citing *Winston v. Mediafare Entm't Corp.*, 777 F.2d 78, 80 (2d Cir. 1985)). However, if either party evinces an intent not to be bound until the parties agree on a fully executed document, no contract will have formed. *Winston*, 777 F.2d at 80. The Circuit has identified four factor to consider in discerning whether parties intended to be bound by a settlement agreement:

> (1) whether there has been an express reservation of the right not to be bound in the absence of a writing; (2) whether there has been partial performance of the contract; (3) whether all of the terms of the alleged contract have been agreed upon; and (4) whether the agreement at issue is the type of contract that is usually committed to writing.

*Winston*, 777 F.2d at 80. No single factor is dispositive, but each factor offers significant guidance. *Ciaramella*, 131 F.3d at 323.

The first two factors weigh in favor of enforcement. The parties did not expressly reserve the right to be bound in the absence of a writing. Moreover, Plaintiff performed on the agreement by declining to file her motion for conditional class certification, and Defendants performed by withdrawing their letter-motion seeking to compel Plaintiff's deposition.

The third and fourth factors, however, weigh against enforcement.

With respect to the third factor, courts look to "whether there was 'literally nothing left to negotiate.'" *Winston*, 777 F.2d at 82 (quoting *R.G. Grp., Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 76 (2d Cir. 1984)). The Circuit has instructed that "the actual drafting of a written instrument will frequently reveal points of disagreement, ambiguity, or omission which must be worked out prior

to execution. Details that are unnoticed or passed by in oral discussion will be pinned down when the understanding is reduced to writing." *Id.* (citations and internal alterations omitted). The Second Circuit has made clear that even "minor" or "technical" disagreements that arise during negotiations over the language of a written agreement can weigh against enforcement. *Id.*

Here, the parties merely agreed to the broad terms of a settlement without deciding how those terms would be implemented. For instance, there is no evidence that the parties agreed whether Plaintiff would be paid in one lump sum or in a number payments over months or years. Moreover, as stated above, Mr. Dermesropian evinced an intent to further negotiate the details of the written agreement. Accordingly, the third factor weighs strongly against enforcement.

As to the fourth factor, courts generally evaluate the complexity of the agreement to determine whether it is of the type usually committed to writing. *See Ciaramella*, 131 F.3d at 326. However, regardless of their complexity, settlements of the FLSA claims are of the type typically committed to writing, because they require judicial approval. *See Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015); *Alvarado v. Five Town Car Wash, Inc.*, 2014 WL 252015, at *2 (E.D.N.Y. Jan. 22, 2014) ("[W]ritten agreements are the norm when parties seek to settle claims under the FLSA."). Put otherwise, no settlement of an FLSA case is enforceable until it has been approved by a federal judge This Court requires parties to submit their settlements in writing, for approval, together with a joint letter motion. That could not possibly happen here.

Moreover, the parties did, in fact, express their intention to commit their agreement to writing. Accordingly, the final *Winston* factor also strongly weighs against enforcement.

In sum, two of the four *Winston* factors weigh strongly against enforcement, and one of these factors – the fourth – is, in my opinion, dispositive.

Because it requires judicial approval to be enforceable, *Cheeks*, 796 F.3d at 206, the settlement at issue presents a distinct situation not contemplated by the Court in *Winston* or later Second Circuit cases. *See Cheeks*, 796 F.3d at 206.

The only Second Circuit case dealing with enforcement of a settlement of FLSA claims found that the agreement was not enforceable on unrelated grounds. *See Kaczmarcysk v. Dutton*, 414 F. App'x 354, 355–56 (2d Cir. 2011). Three of my district court colleagues in this Circuit have addressed this issue. In two of those cases, the courts collapsed the issue into the fourth *Winston* factor. *See Alvarado*, 2014 WL 252015, at *2; *Rahman v. Kaplan Corneila, Inc.*, 2014 WL 541851, at *7–8 (S.D.N.Y. Feb. 11, 2014). In *Alvarado*, 2014 WL 252015, at *2, the Court found that the fourth factor weighed against enforcement because FLSA settlements are usually committed to writing. It held that the settlement was not binding because the weight of the *Winston* factors as whole, including the fourth factor, disfavored enforcement. In *Rahman v. Kaplan Corneila, Inc.*, 2014 WL 541851, at *7–8, the Court enforced the settlement, finding that the fourth factor, as with the other three factors, weighed in favor of enforcement. However, there, the parties had submitted a draft memorializing the terms of their agreement to the Court, and the Court was prepared to approve the settlement "without the need for further submissions." *Id.* at 7. Furthermore, the Court was closely involved in the settlement negotiations, and the final agreement tracked recommendations made by the Court and accepted by the parties. *Id.* at 1–2, 7. The Magistrate Judge who enforced the settlement emphasized that, had the District Judge filed the parties' consent to her jurisdiction just one day earlier, the settlement would have likely already been approved before the plaintiff would have had the opportunity to seek to withdraw from it. *Id.* at 7. Therefore, for FLSA purposes, the Court treated the settlement as having been approved. Here, on

7

the other hand, I was not involved in the negotiations and I only have an email setting out the broad terms of an agreement, which would require further negotiations to finalize.

In the final case addressing the FLSA issue, *Nunez v. Shinobi NY LLC*, 2013 12107728, at *3 (S.D.N.Y. Sept. 13, 2013), the Court addressed *Cheeks* separately from the *Winston* factors and found that an FLSA settlement could not be binding before it is approved by a court. The Court reasoned that holding a plaintiff to a settlement which she refused to sign and of which the Court had not approved was contrary to FLSA policy of protecting plaintiffs. *Id.* I find the reasoning of the case to be persuasive.

Accordingly, Defendants' motion to enforce the settlement is denied.

Having failed in their motion to enforce the settlement, Defendants' motion for attorneys' fees for expenses incurred in enforcing the settlement is also denied.

## CONCLUSION

For the foregoing reasons, Defendants' motion to enforce the settlement agreement is DENIED and Defendants' motion for attorneys' fees is DENIED.

The Clerk of the Court is directed to remove Dkt. No. 40 from the Court's list of pending motions.

As Plaintiff has already missed her deadline to file a motion for conditional class certification, any such motion must be filed within fourteen days of this decision.

Dated: September 25, 2017

_____
Chief Judge

BY ECF TO ALL COUNSEL