**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| YAJAIRA VELAZQUEZ,<br><br>                    Plaintiff,<br><br>         v.<br><br>YOH SERVICES, LLC, CNBC, INC., CNBC, LLC,<br>NBCUNIVERSAL MEDIA, LLC, BRENDA<br>GUZMAN, individually and in her official capacity,<br>MARY DUFFY, individually and in her official<br>capacity, JOHN AND JANE DOES 1-10, individually<br>and in their official capacities, XYZ CORP. 1-10,<br><br>                    Defendants. | Civil Action No.  1:17-cv-00842<br><br>***ELECTRONICALLY FILED*** |

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

MORGAN, LEWIS & BOCKIUS LLP
Sam S. Shaulson
101 Park Avenue
New York, NY 10178
Tel:  212.309.6000

Michael J. Puma
Eric C. Kim
1701 Market Street
Philadelphia, PA 19103
Tel:  215.963.5000

NBCUniversal Media, LLC
Erik Bierbauer
Andrew D. Jacobs
30 Rockefeller Plaza
New York, NY 10112
Tel:  212.664.4167

*Attorneys for Defendants CNBC, LLC, (f/k/a*
*CNBC, Inc.), NBCUniversal Media, LLC,*
*Brenda Guzman, and Mary Duffy*

LITTLER MENDELSON, P.C.
Kimberly J. Gost
Paul C. Lantis
Three Parkway
1601 Cherry St., Suite 1400
Philadelphia, PA 19102
Tel:  267.402.3007

Maria Caceres-Boneau
900 Third Avenue
New York, NY 10022
Tel:  212.497.6853

*Attorneys for Defendant Yoh Services, LLC*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ........................................................................................1

BACKGROUND ............................................................................................................2

ARGUMENT .................................................................................................................5

I.      Plaintiff's Discrimination Claims Fail as a Matter Of Law...............................5

        A.      Plaintiff Cannot Establish a Prima Facie Case for Race, Color, or National
                Origin Discrimination......................................................................6

        B.      CNBC Has Set Forth Legitimate, Non-Discriminatory Reasons for
                Deciding to Stop Scheduling Plaintiff. ...............................................9

        C.      Plaintiff Can Offer No Evidence to Demonstrate That CNBC's Legitimate
                Reasons Are Pretextual....................................................................10

                1.      Plaintiff Cannot Prove that CNBC's Legitimate Reasons Are False. ......10

                2.      Plaintiff Cannot Prove It Is "More Likely Than Not" that
                        Discrimination Motivated the Alleged Adverse Action. ..........................12

II.     Plaintiff's Overtime Claims Under the FLSA and NYLL Fail Because Plaintiff
        Cannot Prove the Amount and Extent of Allegedly Uncompensated Work or that
        Defendants Had Knowledge of Such Work. ...................................................14

III.    Plaintiff's "Recordkeeping" and "Wage Statement" Claims Under the NYLL Fail
        as a Matter of Law. .....................................................................................20

        A.      There Is No Private Right of Action for a "Recordkeeping" Claim Under
                NYLL. ............................................................................................20

        B.      Plaintiff's Claim for Failure to Provide Itemized Wage Statements in
                Violation of the NYLL Fails Because Plaintiff was Provided with a Wage
                Statement for Each Pay Period. ........................................................20

IV.     Plaintiff's FLSA and NYLL Retaliation Claims Fail as a Matter of Law......................22

        A.      Plaintiff Cannot Establish Participation in Protected Activity. ...........................22

        B.      Plaintiff Cannot Establish Causation....................................................23

        C.      Plaintiff Cannot Establish that CNBC's Legitimate Reasons Are Pretext
                for Retaliation. ...............................................................................24

CONCLUSION ...........................................................................................................25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

Anderson v. Mt. Clemens Pottery Co.,
  328 U.S. 680 (1946) ................................................................................................18

Atkins v. Pitney Bowes Management Services,
  No. 12-5575, 2015 WL 144158 (S.D.N.Y. Jan. 12, 2015).....................................10

Bennett v. Progressive Corp.,
  225 F. Supp. 2d 190 (N.D.N.Y. 2002) ...................................................................17

Bernard v. J.P. Morgan Chase Bank N.A.,
  No. 08- 4784, 2010 WL 423102 (S.D.N.Y. Feb. 5, 2010), aff'd, 408 F. App'x
  465 (2d. Cir. 2011) .................................................................................................27

Best v. Drugs,
  No. 14-2648, 2017 WL 218251 (S.D.N.Y. Jan. 11, 2017) (McMahon, C.J.),
  aff'd, 715 F. App'x 95 (2d Cir. 2018) ....................................................................12

Carlton v. Mystic Transp., Inc.,
  202 F.3d 129 (2d Cir. 2000) ...................................................................................11

Carter v. Tuttnaeur U.S.A. Co.,
  78 F. Supp. 3d 564 (E.D.N.Y. 2015)......................................................................23

Chambers v. TRM Copy Centers Corp.,
  43 F. 3d 29 (2d Cir. 1994) ......................................................................................11

Chen v. Major League Baseball,
  6 F. Supp. 3d 449 (S.D.N.Y. 2014) ........................................................................23

Daniels v. 1710 Realty LLC,
  497 F. App'x 137 (2d Cir. 2012).....................................................................17, 18, 20, 22

Danzer v. Norden Systems, Inc.,
  151 F.3d 50 (2d Cir. 1998) ...............................................................................16, 17

In re Domino's Pizza Inc.,
  No. 16-6274, 2018 WL 1587593 (S.D.N.Y. Mar. 27, 2018)...................................23

Dunn v. Sederakis,
  143 F. Supp. 3d 102 (S.D.N.Y. 2015) ....................................................................26

Dunn v. URS Corp.,
  705 F. App'x 32 (2d Cir. 2017)...............................................................................11

Giudice v. Red Robin Int'l, Inc.,
    555 F. App'x 67 (2d Cir. 2014) ................................................................27

Grady v. Affiliated Cent., Inc.,
    130 F.3d 553 (2d Cir. 1997) ....................................................................11

Greathouse v. JHS Sec., Inc.,
    784 F.3d 105 (2d Cir. 2015) ....................................................................26

Hazen Paper Co. v. Biggins,
    507 U.S. 604 (1993) ..................................................................................8

Hill v. Bloomberg, L.P.,
    No. 14-9809, 2016 WL 1665599 (S.D.N.Y. Apr. 20, 2016) (McMahon, J.) ...............9, 10, 14

Jean-Louis v. N. Shore Univ. Hosp. at Plainview,
    No. 06-3023, 2007 WL 4409937 (E.D.N.Y. Dec. 14, 2007)................................12

Joseph v. Owens & Minor Distribution, Inc.,
    5 F. Supp. 3d 295 (E.D.N.Y. 2014) ..........................................................13

Joza v. WW JFK LLC,
    No. 07-4153, 2010 WL 3619551 (E.D.N.Y. Sept. 10, 2010)..........................18, 21

Kasiotakis v. Macy's Retail Holdings, Inc.,
    No. 14-462, 2015 WL 6125356 (S.D.N.Y. Oct. 16, 2015) (McMahon, J.)............................16

Kasten v. Saint-Gobain Performance Plastics Corp.,
    563 U.S. 1 (2011) ....................................................................................26

Lawless v. TWC Media Sols., Inc.,
    No. 11-2076, 2012 WL 2579897 (2d Cir. July 5, 2012) ........................................13

Lee v. Vance Exec. Protection, Inc.,
    7 F. App'x 160 (4th Cir. 2001)..................................................................21

Lindsay v. Clear Wireless LLC,
    No. 13-834, 2016 WL 916365 (D. Minn. Mar. 10, 2016).................................21, 22

McDonnell Douglas Corp. v. Green,
    411 U.S. 792 (1973) ............................................................................8, 9, 25

McLaughlin v. New York City Bd. of Educ.,
    No. 04-1270 (FM), 2008 WL 216308 (S.D.N.Y. Jan. 22, 2008) ..........................11

Moccio v. Cornell Univ.,
    889 F. Supp. 2d 539 (S.D.N.Y. 2012), aff'd, 526 F. App'x 124 (2d Cir. 2013) ....................27

Mullins v. City of New York,
 626 F.3d 47 (2d Cir. 2010) ....................................................................................... 25

Mumin v. Uber Techs., Inc.,
 No. 15-6143, 2017 WL 934703 (E.D.N.Y. Mar. 8, 2017) ...................................... 23

Nieddu v. Lifetime Fitness, Inc.,
 38 F. Supp. 3d 849 (S.D. Tex. 2014) ...................................................................... 21

Pearson v. Unification Theological Seminary,
 785 F. Supp. 2d 141 (S.D.N.Y. 2011) ..................................................................... 15

Perma Research & Dev. Co. v. Singer Co.,
 410 F.2d 572 (2d Cir. 1969) .................................................................................... 22

Pierre v. Hajar, Inc.,
 No. 15-CV-02772, 2018 WL 2393158 (E.D.N.Y. Mar. 28, 2018) ......................... 24

Reeves v. Sanderson Plumbing Prods., Inc.,
 530 U.S. 133 (2000) ................................................................................................... 8

Seever v. Carrols Corp.,
 528 F. Supp. 2d 159 (W.D.N.Y. 2007) .............................................................. 18, 21

Sotomayor v. City of New York,
 862 F. Supp. 2d 226 (E.D.N.Y. 2012), aff'd, 713 F.3d 163 (2d Cir. 2013) ............ 13

Tex. Dep't of Cmty. Affairs v. Burdine,
 450 U.S. 248 (1981) ................................................................................................... 9

Toliver v. Cmty. Action Comm'n,
 613 F. Supp. 1070 (S.D.N.Y 1985), aff'd, 800 F.2d 1128 (2d Cir. 1986) ............. 10

Varughese v. Mount Sinai Med. Ctr.,
 No. 12-8812, 2015 WL 1499618 (S.D.N.Y. Mar. 27, 2015) (McMahon, J.),
 aff'd, 693 F. App'x 41 (2d Cir. 2017) ................................................................*passim*

Vinokur v. Sovereign Bank,
 701 F. Supp. 2d 276 (E.D.N.Y. 2010) ..................................................................... 13

Warman v. American National Standards Institute,
 No. 15-5486, 2016 WL 3676681 (S.D.N.Y July, 6, 2016)...................................... 23

Waters v. Gen. Bd. of Global Ministries,
 769 F. Supp. 2d 545 (S.D.N.Y. 2011) ..................................................................... 10

Weichman v. Chubb & Son,
 552 F. Supp. 2d 271 (D. Conn. 2008) ..................................................................... 12

White v. Pacifica Found.,
    973 F. Supp. 2d 363 (S.D.N.Y. 2013) ...................................................................... 10

**Statutes**

29 U.S.C. § 207 ........................................................................................................... 17

42 U.S.C. § 1981 ....................................................................................................... 4, 14

Fair Labor Standards Act ........................................................................................ *passim*

New York City Human Rights Law ........................................................................ *passim*

New York Labor Law ............................................................................................. *passim*

New York State Human Rights Law ....................................................................... *passim*

**Other Authorities**

Fed. R. Civ. P. 15 ........................................................................................................... 9

## PRELIMINARY STATEMENT

Showing up to work on time is important for any job, and it is especially important in cable news, where punctuality is critical to airing up-to-the-minute live news coverage.  Plaintiff Yajaira Velazquez was a freelance hair and makeup artist for defendant CNBC, LLC.[1]  She was frequently late to work, and, despite many opportunities, she failed to improve over time.  Finally, on January 29, 2016, Plaintiff overslept and missed her assignment to handle hair and makeup for reporter Jackie DeAngelis, the on-air talent with whom Plaintiff worked most often.  That day, after Ms. DeAngelis asked defendant Brenda Guzman, a CNBC Production Manager, to stop assigning Plaintiff to her, Ms. Guzman concluded that CNBC no longer could rely on Plaintiff due to her chronic lateness and took her off the hair and makeup schedule altogether.

Plaintiff asserts a host of different and contradictory claims against Defendants.  Specifically, she claims that Defendants discriminated against her for identifying as a woman of color from the Dominican Republic in violation of the New York State Human Rights Law ("NYSHRL"), the New York City Human Rights Law ("NYCHRL"), and 42 U.S.C. § 1981.  Plaintiff also brings claims for unpaid overtime, wage statement penalties, recordkeeping penalties, and retaliation under the Fair Labor Standards Act ("FLSA") and unspecified sections of the New York Labor Law ("NYLL").  These claims have no basis in fact or law.

As an initial matter, the decision to stop scheduling Plaintiff for CNBC assignments was made primarily by Ms. Guzman, who (like Plaintiff) identifies as an Afro-Latina from the Dominican Republic.  Ms. Guzman also was the person who initially decided to offer Plaintiff the CNBC assignment.  Plaintiff's discrimination claims are thus predicated on the illogical

---

[1] (f/k/a CNBC, Inc., and together with defendants NBCUniversal Media, LLC, Brenda Guzman and Mary Duffy herein referred to as "CNBC").

premise that someone in the same protected class as her would decide to retain her only to later end her assignment because of her membership in the shared protected class.

In any event, Plaintiff cannot avoid the incontrovertible proof that she was taken off schedule because she was chronically late and unreliable.  The ultimate burden is on Plaintiff to prove that CNBC's legitimate reasons for the alleged adverse action are pretext for discrimination.  She cannot sustain that burden.  This is fatal to both Plaintiff's discrimination and her retaliation claims.

Plaintiff's wage claims fail because she cannot meet her burden to prove that she actually worked the overtime hours that she now alleges were unpaid.  Plaintiff acknowledges that she was expected to report all of her hours worked and that she did so accurately, but she alleges that Defendants did not pay her for all of the overtime hours she worked.  Yet Plaintiff proffers no evidence to support that claim other than her own inconsistent and speculative testimony, which is not sufficient to defeat summary judgment.  Further, Plaintiff's recordkeeping claim gives rise to no private right of action, as a matter of law.  Finally, Plaintiff's wage statement claim fails because Plaintiff was a New Jersey employee and it is based on the false premise that Plaintiff was not paid overtime hours.

For these reasons and others explained further below, Defendants respectfully request that the Court grant summary judgment and dismiss all of Plaintiff's claims with prejudice.

## BACKGROUND[2]

Plaintiff Yajaira Velazquez was employed by defendant Yoh Services, LLC ("Yoh") and assigned to provide freelance hair and makeup services to on-air talent for the CNBC cable

---

[2] A complete recitation of the material, undisputed facts in this case is contained in the CNBC Defendants' Statement of Undisputed Material Facts ("SUMF") and Yoh's Statement of Undisputed Material Facts ("Yoh SUMF") filed herewith.

network.  (SUMF ¶¶ 7-8, 19.)  Plaintiff's point of contact at CNBC was Brenda Guzman, the Production Manager responsible for the network's hair and makeup operations.  (SUMF ¶ 4.) Like Ms. Velazquez, Ms. Guzman is an Afro-Latina of Dominican national origin.  (SUMF ¶¶ 137-138; see Amended Complaint, Dkt. No.  87 ("Am Compl.") ¶ 9.)  Ms. Guzman's supervisor was Mary Duffy, Vice President of Talent Development and Senior Executive Producer at CNBC.  (SUMF ¶ 6.)

Plaintiff began working at CNBC in September 2014, handling hair and makeup at the various locations from which CNBC broadcast live, most often the New York Mercantile Exchange ("NYMEX") and the New York Stock Exchange ("NYSE").  (SUMF ¶¶ 19-20, 34.) Plaintiff was often scheduled for a morning shift at NYMEX to do hair and makeup for reporter Jackie DeAngelis, followed by a shift at NYSE.  (SUMF ¶¶ 34-35.)  Like all freelance artists assigned to CNBC through Yoh, Plaintiff was paid on an hourly basis and was responsible for reporting her own time.  (SUMF ¶¶ 9-10, 21-22.)

Plaintiff was persistently late.  (SUMF ¶ 29; see SUMF ¶¶ 30-54.)  In October 2014, after Plaintiff's lateness caused a CNBC contributor to miss his scheduled appearance on the network, Ms. Guzman advised Plaintiff that her lateness was unacceptable.  (SUMF ¶¶ 30-31.)  Plaintiff apologized and promised to improve, but she continued to arrive late.  (SUMF ¶¶ 32-33.)  In July 2015, as complaints about Plaintiff's lateness mounted, Ms. Guzman and Ms. Duffy collected badge-swipe data from the NYSE, which showed that Plaintiff had been late to her assignment there 35 times over the previous two months – far more often than any of her peers.  (SUMF ¶¶ 36-39.)  Again, Ms. Guzman reminded Plaintiff of the importance of punctuality, and again Plaintiff committed to arrive on time in the future.  (SUMF ¶¶ 41-42.)

CNBC gave Plaintiff more chances to improve, but her lateness continued.  (SUMF ¶¶ 43-44.)  In September 2015, Ms. DeAngelis raised her growing concerns about Plaintiff's lateness to Ms. Guzman, who had another conversation with Plaintiff about it.  (SUMF ¶ 45.)  Ms. DeAngelis also spoke repeatedly with Plaintiff about her lateness.  (SUMF ¶ 46.)  On September 22, 2015, for example, after Plaintiff texted her to say that she would be about 15 minutes late, Ms. DeAngelis responded: "I can't keep rushing and sprinting down to the camera.  We need to figure something out."  (DeAngelis Decl. Ex. 3.)  Nevertheless, Plaintiff kept showing up late to her NYMEX shift, sometimes by as much at 30 minutes.  Plaintiff tried to rationalize her lateness to Ms. DeAngelis, claiming to her, "[a]s long as I can get to you by 9:05" – *i.e*, 35 minutes late – "we are good."  (DeAngelis Decl. Ex. 4.)

Plaintiff also continued to arrive late to her NYSE shift, even after CNBC adjusted Plaintiff's usual shift at NYSE to accommodate her habitual, tardy arrival time.  (SUMF ¶¶ 47-49.)  On January 13, 2016, Ms. Guzman was at NYSE and personally observed Plaintiff show up almost 10 minutes late for her adjusted start time of 10:30 a.m.  (SUMF ¶ 50; see Guzman Decl. Ex. 13.)

On January 28, 2016, Plaintiff was once again about 30 minutes late for her assignment to handle Ms. DeAngelis's hair and makeup at NYMEX.  (SUMF ¶ 51.)  The next day, January 29, 2016, Plaintiff overslept and missed her assignment with Ms. DeAngelis.  (SUMF ¶¶ 52-54.)  As a result, Ms. DeAngelis had to do her own hair and makeup while also performing her primary job function – newsgathering – and preparing to appear on air at 9:30 a.m.  (SUMF ¶ 55.)  Due to Plaintiff's chronic lateness and unreliability, Ms. DeAngelis emailed Ms. Guzman to ask her to stop scheduling Plaintiff for her.  (SUMF ¶ 55.)  At that point, Ms. Guzman concluded that Plaintiff should be taken off CNBC's hair and makeup schedule altogether, and Ms. Duffy

agreed.  (SUMF ¶ 56.)  The only reason for this decision was Plaintiff's persistent lateness and unreliability.  (SUMF ¶ 57.)  After Ms. Guzman told Plaintiff on January 29, 2016, that she no longer would be scheduled for CNBC assignments, Plaintiff sent Ms. Guzman, Ms. DeAngelis, and Ms. Duffy an email with the subject line, "Thank you for a great year and deepest apologies" in which she apologized for her unsatisfactory performance and made no mention of the alleged facts forming the basis of this action.  (SUMF ¶¶ 58-60.)

In the spring or summer of 2016, Ms. Velazquez retained an attorney.  (SUMF ¶ 73.)  She later gathered her old pay stubs from her time at CNBC, and purported to note on those stubs, for the first time, work hours for which she asserts she was not paid.  (SUMF ¶¶ 66, 73.)  Plaintiff filed this action in February 2017.  (See Complaint, Dkt. No. 1.)

## ARGUMENT

### I.   Plaintiff's Discrimination Claims Fail as a Matter Of Law.

For an employment discrimination claim, the burden is on the plaintiff to establish discrimination by a preponderance of the evidence.  Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142 (2000).[3]  Plaintiff must prove that her national origin/race/color/ethnicity was a "determinative" factor in the alleged adverse employment decision.  See Hazen Paper Co. v. Biggins, 507 U.S. 604, 610 (1993).  Plaintiff has no direct evidence of discrimination. Therefore, she must proceed under the burden-shifting analysis first articulated by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).[4]

---

[3] CNBC does not concede (and in fact disputes) that it is an employer of Plaintiff and reserves the right to raise that defense at trial.  But for purposes of summary judgment, the Court does not need to address that issue because Plaintiff's claims fail for other reasons.

[4] "Discrimination claims brought under Title VII, § 1981, the [NYSHRL] and [NYCHRL] all are analyzed under the burden-shifting framework that the Supreme Court established in McDonnell Douglas." Varughese v. Mount Sinai Med. Ctr., No. 12-8812, 2015 WL 1499618, at *38 (S.D.N.Y. Mar. 27, 2015) (McMahon, J.), aff'd, 693 F. App'x 41 (2d Cir. 2017).  Although

Under the McDonnell Douglas framework, Plaintiff must first establish a *prima facie* case of discrimination.   Hill v. Bloomberg, L.P., No. 14-9809, 2016 WL 1665599, at *8 (S.D.N.Y. Apr. 20, 2016) (McMahon, J.) (dismissing plaintiff's race discrimination claims under Title VII, NYSHRL and NYCHRL).  If Plaintiff can establish a *prima facie* case, the burden of production shifts to Defendants to proffer a legitimate, non-discriminatory reason for their actions.  Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 254 (1981).  If Defendants do so, Plaintiff can only prevail by proving that Defendants' legitimate, non-discriminatory reason was not their true reason, but rather a pretext for discrimination, and further that intentional discrimination was the real reason for the action.  Id.

Here, Plaintiff cannot establish a *prima facie* case.  But even if she could do so, Plaintiff's discrimination claims still fail because CNBC proffers legitimate, non-discriminatory reasons for ending her assignment and there is no evidence of pretext.[5]

A.   **Plaintiff Cannot Establish a *Prima Facie* Case for Race, Color, or National Origin Discrimination.**

To establish a *prima facie* case of discrimination, Plaintiff bears the burden to show that she (1) was a member of the protected class; (2) was qualified for the job; (3) suffered a materially adverse employment action; and that (4) the action occurred under circumstances

---

under the NYCHRL, a plaintiff ultimately must prove only that her "employer treated [her] less well, at least in part for a discriminatory reason," "the NYCHRL does not alter the kind, quality or nature of evidence that is necessary to support or defeat a motion for summary judgment." Hill, 2016 WL 1665599, at *9 (internal quotations and citations omitted); see also Varughese, 2015 WL 1499618, at *40 (McMahon, J.).

[5] Plaintiff's eighth cause of action, for national origin discrimination under the NYSHRL, also should be dismissed because Plaintiff did not receive leave of Court to include that claim in the Amended Complaint.  See Fed. R. Civ. P. 15.  Plaintiff sought leave to amend the Complaint on January 5, 2018, nearly a year after the initial complaint was filed.  Dkt. No. 84.  The proposed Amended Complaint attached to Plaintiff's letter-motion seeking leave to amend did not include the cause of action for national origin discrimination.  Id.

giving rise to an inference of race/color/ethnicity/national origin discrimination.  Atkins v. Pitney

Bowes Management Services, No. 12-5575, 2015 WL 144158, at *4 (S.D.N.Y. Jan. 12, 2015)

(dismissing discrimination claim under Title VII and noting the result under NYCHRL would be

the same); Hill, 2016 WL 1665599, at *8 (dismissing plaintiff's race discrimination claims under

Title VII, NYSHRL and NYCHRL).  The undisputed facts preclude any inference of

discrimination.

As an initial matter, Ms. Guzman was the primary decision-maker for the alleged adverse

action and is in the same protected class as Plaintiff.[6]  (SUMF ¶¶ 56, 137-138.)  These facts

undermine any inference of discrimination.  See, e.g., White v. Pacifica Found., 973 F. Supp. 2d

363, 380-81 (S.D.N.Y. 2013) (noting that the individuals responsible for Plaintiff's suspension

and termination were in same protected class as him, which "undermines any possible inference

of discriminatory animus"); Waters v. Gen. Bd. of Global Ministries, 769 F. Supp. 2d 545, 554

(S.D.N.Y. 2011) ("[W]here the plaintiff and the individual whose conduct is at issue are

members of the same protected class, the inference that the conduct constitutes harassment or

discrimination is weakened."); Toliver v. Cmty. Action Comm'n, 613 F. Supp. 1070, 1074

(S.D.N.Y 1985), aff'd, 800 F.2d 1128 (2d Cir. 1986) (noting that where decision-maker is in the

same protected class as plaintiff, discrimination is less plausible).

Ms. Guzman was also the person who decided to offer the CNBC assignment to Plaintiff.

(SUMF ¶ 19.)  "When the same actor hires a person already within the protected class, and then

later fires that same person, 'it is difficult to impute to her an invidious motivation that would be

---

[6] Yoh was not involved in the decision to stop scheduling Plaintiff at CNBC.  (YSUMF ¶ 22.)
Yoh learned that Plaintiff was no longer being scheduled at CNBC when Ms. Guzman told
Yoh's Resource Manager, Tara Fields-Gomez, that CNBC had decided to stop scheduling her.
(YSUMF ¶ 23.)

inconsistent with the decision to hire.'" Carlton v. Mystic Transp., Inc., 202 F.3d 129, 137 (2d Cir. 2000) (quoting Grady v. Affiliated Cent., Inc., 130 F.3d 553, 560 (2d Cir. 1997)); McLaughlin v. New York City Bd. of Educ., No. 04-1270 (FM), 2008 WL 216308, at *13 (S.D.N.Y. Jan. 22, 2008) (holding that plaintiff could not make out a *prima facie* case, and finding that "because [plaintiff's] hiring and firing occurred over a period of less than two years [and was decided by the same manager], the [defendant] is entitled to an inference that [plaintiff's manager] did not act with an impermissible motivation").

It strains credulity to believe that Ms. Guzman, who identifies as an Afro-Latina from the Dominican Republic, would accept Plaintiff for assignment and then decide to stop working with Plaintiff because she is an Afro-Latina from the Dominican Republic. Plaintiff fails to proffer any evidence to support this untenable theory of discrimination.

Even putting aside these facts about Ms. Guzman, Plaintiff has failed to establish that she was removed from the hair and makeup schedule in circumstances giving rise to an inference of discrimination. See Dunn v. URS Corp., 705 F. App'x 32, 33 (2d Cir. 2017) (listing the circumstances that may give rise to inference of discrimination). She has adduced no evidence, for example, of "the employer's criticism of the plaintiff's performance in ethnically degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group." Id. (quoting Chambers v. TRM Copy Centers Corp., 43 F. 3d 29, 37 (2d Cir. 1994)). Plaintiff's only support for such an inference lies in the bare allegations of the Amended Complaint, which do not constitute evidence on a motion for summary judgment and, as demonstrated below, are factually and legally baseless in any event. See Varughese, 2015 WL 1499618, at *3 ("[I]n an employment

discrimination case, however, a plaintiff must provide more than conclusory allegations to resist

a motion for summary judgment") (internal quotations omitted)

As a result, Plaintiff cannot establish an inference of discrimination and cannot meet her

burden to establish a *prima facie* case of discrimination.

### B.   CNBC Has Set Forth Legitimate, Non-Discriminatory Reasons for Deciding to Stop Scheduling Plaintiff.

Even if Plaintiff could establish a *prima facie* case, her discrimination claims still fail

because CNBC had legitimate, non-discriminatory reasons to end her assignment.  Plaintiff was

taken off the schedule because CNBC concluded that she was persistently late for her shifts and

missed her shift more than once.  Indeed, Plaintiff had punctuality issues from the outset, and she

failed to improve despite receiving multiple chances.  (SUMF ¶¶ 29-54.)  Finally, on January 29,

2016, Plaintiff overslept and missed her shift to do the hair and makeup of Ms. DeAngelis, who

then asked Ms. Guzman to stop scheduling Plaintiff for her.  (SUMF ¶¶ 53-55.)  Due to

Plaintiff's continual lateness and unreliability, and the fact that Ms. DeAngelis, the most frequent

consumer of Plaintiff's services, no longer wanted to work with Plaintiff, Ms. Guzman

concluded there was no longer a place in CNBC's hair and makeup schedule for Plaintiff.

(SUMF ¶¶ 55-56.)

CNBC's decision was legitimate and non-discriminatory.  See, e.g., Best v. Drugs, No.

14-2648, 2017 WL 218251, at *5 (S.D.N.Y. Jan. 11, 2017) (McMahon, C.J.) (granting summary

judgment to dismiss ADA discrimination claims, holding that defendant terminated plaintiff for

tardiness issues), aff'd, 715 F. App'x 95 (2d Cir. 2018); *see also* Weichman v. Chubb & Son,

552 F. Supp. 2d 271, 286 (D. Conn. 2008); Jean-Louis v. N. Shore Univ. Hosp. at Plainview, No.

06-3023, 2007 WL 4409937, at *9 (E.D.N.Y. Dec. 14, 2007).

C.    **Plaintiff Can Offer No Evidence to Demonstrate That CNBC's Legitimate Reasons Are Pretextual.**

Because Defendants have proffered a legitimate, non-discriminatory basis for their action, the burden shifts to Plaintiff to "[produce] evidence to support a rational finding that the reasons proffered by the defendant were false, ***and*** that more likely than not discrimination was the real reason for the employment action." Lawless v. TWC Media Sols., Inc., No. 11-2076, 2012 WL 2579897, at *1 (2d Cir. July 5, 2012) (internal citations and quotation marks omitted) (emphasis added); Vinokur v. Sovereign Bank, 701 F. Supp. 2d 276, 289 (E.D.N.Y. 2010).  For purposes of Plaintiff's NYCHRL claims, dismissal is appropriate where there is no evidence that an employer's conduct was motivated by discrimination.  Joseph v. Owens & Minor Distribution, Inc., 5 F. Supp. 3d 295, 321 (E.D.N.Y. 2014).  Merely casting doubt on the stated reasons for an adverse action is not enough; Plaintiff must affirmatively "'link the adverse employment action to a discriminatory motivation.'" Varughese, 2015 WL 1499618, at *40 (quoting Sotomayor v. City of New York, 862 F. Supp. 2d 226, 258 (E.D.N.Y. 2012), aff'd, 713 F.3d 163 (2d Cir. 2013)).  "Where a plaintiff cannot do so, her claims fail."  Id.

1.    ***Plaintiff Cannot Prove that CNBC's Legitimate Reasons Are False.***

Plaintiff cannot present any evidence to establish that CNBC fabricated its legitimate reasons for ending Plaintiff's assignment. CNBC's reasons are well-supported in the record, and Plaintiff's own admissions further preclude her from establishing pretext.  Specifically:

- Plaintiff admitted and apologized for her lateness multiple times (SUMF ¶¶ 32, 42, 59);

- Every witness deposed by Plaintiff testified that Plaintiff was persistently late and unreliable, which is further supported by contemporaneous emails and texts, many of which Plaintiff herself wrote (SUMF ¶ 29; see, e.g., SUMF ¶¶ 32, 42, 46, 48, 50);

- Entrance data from the NYSE that Ms. Guzman reviewed contemporaneously showed that Plaintiff routinely was late for her assignments there, often by more than fifteen minutes, and no other freelancer was late nearly as much (SUMF ¶¶ 36-39);

- It is undisputed that Ms. Guzman, in consultation with Ms. Duffy, finally decided to end CNBC's relationship with Plaintiff after Ms. DeAngelis (the reporter with whom Plaintiff worked most often) asked that Plaintiff no longer be scheduled for her (SUMF ¶¶ 55-56);

- Ms. DeAngelis confirmed in her deposition that she asked Ms. Guzman that she not assign Plaintiff to her anymore because Plaintiff was so unreliable (DeAngelis Dep. 12-13).

While Plaintiff claims that other, non-African-American/Hispanic hair and make-up artists were late to their shifts as often as her and did not face adverse action, nothing in the record supports that allegation.  Ms. Guzman testified that Plaintiff was chronically late for her shifts, far more than other hair and makeup artists at the time.  (SUMF ¶ 62.)  This testimony is corroborated by the NYSE entrance data that Ms. Guzman collected, which show that in June and July 2015, Plaintiff was more than 5 minutes late for her shift in that building *35 times* -- more than the ***total combined number of times*** that all of the three other hair and makeup artists assigned to NYSE were late, and that – unlike others – Plaintiff was often more than 15 minutes late.  (SUMF ¶¶ 37-39.)  Plaintiff was the only hair and makeup artist at the time who had an on-air talent ask Ms. Guzman to stop scheduling Plaintiff.  (SUMF ¶ 63.)  No other artist assigned to Ms. DeAngelis had an issue with recurring lateness like Ms. Velazquez did.  (SUMF ¶ 64.)  And the decision to take Plaintiff off the hair and makeup schedule was consistent with CNBC's treatment of other hair and makeup artists with severe lateness problems.  (See SUMF ¶ 28.)

Because CNBC has presented objective and unrefuted evidence to establish that it had legitimate reasons for its alleged adverse action, the Court should dismiss Plaintiff's NYSHRL, NYCHRL, and Section 1981 discrimination claims.  See, e.g., Hill, 2016 WL 1665599, at *8 (McMahon, J.) (dismissing discrimination claims where defendants presented "substantial evidence" to show plaintiff was terminated for performance issues); Varughese, 2015 WL 1499618, at *3 (McMahon, J.) ("On the evidence in the record, no reasonable juror could find

11

[plaintiff] to have overcome the overwhelming evidence that Defendants disciplined and terminated her, not because of her sex or her ethnicity, but because of her own admitted behavior"); Pearson v. Unification Theological Seminary, 785 F. Supp. 2d 141 (S.D.N.Y. 2011) (dismissing discrimination claims where plaintiff admitted to the misconduct defendant stated was the reason for termination).

### 2. *Plaintiff Cannot Prove It Is "More Likely Than Not" that Discrimination Motivated the Alleged Adverse Action.*

Plaintiff also fails to establish pretext because she cannot offer any evidence to demonstrate "more likely than not" that discrimination on the basis of her race, color, ethnicity, or national origin was the "real reason" for the alleged adverse action. Plaintiff claims that Defendants had discriminatory animus by alleging that (1) other hair and make-up artists were treated more favorably than her with regard to transportation reimbursements or expenses (Am. Compl. ¶¶ 65-67); (2) Ms. Guzman purportedly said to her "my complexion is better off than your complexion" (Am. Compl. ¶ 63); (3) another hair and makeup artist allegedly told Plaintiff that she heard Ms. Duffy say, "Yajaira, that Dominican girl, is one of your people, and she is upsetting me" (Am. Compl. ¶ 70), and (4) another hair and makeup artist allegedly told Plaintiff that Ms. Guzman told her that Ms. Duffy "warned [her] about hiring Spanish people" (Am. Compl. ¶ 72).[7] Plaintiff has no evidence to corroborate these allegations other than her own self-serving testimony, which is insufficient to defeat summary judgment. See Varughese, 2015 WL 1499618, at *3. Furthermore, even if these allegations were true, which they are not, they do not create a genuine dispute of material fact.

---

[7] Plaintiff testified that she never heard anyone from Yoh make any discriminatory comments. (YSUMF ¶ 26.)

*First*, with regard to Plaintiff's allegations about transportation expense reimbursement, Plaintiff conceded that any alleged denial of reimbursement *was not* caused by her race or national origin.  (SUMF ¶ 140.)  Further, the undisputed evidence is that Plaintiff's transportation expenses were handled in the same way as expenses for any other Yoh contractor providing hair and makeup services to CNBC.  (SUMF ¶ 141.)

*Second*, nothing in the record supports Plaintiff's allegation that Ms. Guzman said to Plaintiff, "my complexion is better off than your complexion," or anything to that effect.  (SUMF ¶ 142.)  But even if Ms. Guzman made such a comment, this stray remark, unconnected temporally or otherwise to CNBC's adverse action, would be legally insufficient to support a discrimination claim.  See, e.g., Danzer v. Norden Systems, Inc., 151 F.3d 50, 56 (2d Cir. 1998) ("[S]tray remarks, even if made by a decision maker, do not constitute sufficient evidence [to support] a case of employment discrimination.").  Moreover, this observation demonstrates no discriminatory animus.  Indeed, Plaintiff and Ms. Guzman are in the same protected class, and Ms. Guzman would have known the color of Plaintiff's complexion when she interviewed Plaintiff and decided to offer her the CNBC assignment.

*Third*, Plaintiff's claim that Ms. Duffy made discriminatory comments relies entirely on inadmissible double- or triple-hearsay that may not be considered on summary judgment.  See, e.g., Varughese, 2015 WL 1499618, at *2 (inadmissible hearsay allegations do not preclude summary judgment on a discrimination claim); Kasiotakis v. Macy's Retail Holdings, Inc., No. 14-462, 2015 WL 6125356, at *2 (S.D.N.Y. Oct. 16, 2015) (McMahon, J.) (comment that one employee heard and relayed to plaintiff is inadmissible double-hearsay on summary judgment).  Further, the record rebuts that this hearsay, even if admitted, shows pretext for any discrimination: Ms. Guzman has continued to schedule other African-American and Hispanic

hair and makeup artists for assignments during and after Plaintiff's time with CNBC, contrary to

Ms. Duffy's alleged "warning" to Ms. Guzman about "hiring Spanish people."  (SUMF ¶ 139.)

And again, even if the alleged statements from Ms. Duffy could be proven, they would constitute

stray remarks, insufficient to establish pretext or overcome summary judgment.  Danzer, 151

F.3d at 56.

Thus, Plaintiff cannot establish that CNBC's reasons to stop scheduling her are pretext

for discrimination, and she fails to meet her ultimate burden to prove that Defendants engaged in

intentional discrimination.  Accordingly, Plaintiff's discrimination claims fail as a matter of law

and should be dismissed.

## II.   Plaintiff's Overtime Claims Under the FLSA and NYLL Fail Because Plaintiff Cannot Prove the Amount and Extent of Allegedly Uncompensated Work or that Defendants Had Knowledge of Such Work.

In order to prevail on her "off-the-clock" overtime claims under federal and state law,

Plaintiff bears the burden of proving (1) the amount of uncompensated work she actually

performed; and (2) that Defendants had actual or constructive knowledge that she was working

off-the-clock and the amount of such work.  Daniels v. 1710 Realty LLC, 497 F. App'x 137, 139

(2d Cir. 2012); Bennett v. Progressive Corp., 225 F. Supp. 2d 190, 215 (N.D.N.Y. 2002) (same

analysis under NYLL).

As an initial matter, an employee cannot recover overtime pay under the FLSA or NYLL

unless the alleged uncompensated hours were over 40 in a week.  See 29 U.S.C. § 207 (defining

overtime as hours over 40 per week under FLSA); N.Y. Comp. Code R. & Reg., tit. 12, § 142-

2.2 (NYLL overtime requirements track FLSA).  Plaintiff alleges in the Amended Complaint that

she was not paid for a specific number of hours worked during fifteen different weeks.  (Am.

Compl. ¶¶ 52-53.)  For some of those weeks, even assuming that Plaintiff's allegations of off-

the-clock work are true, which they are not, Plaintiff would not have an actionable overtime

claim under the FLSA or NYLL. See SUMF ¶¶ 76, 79, 123, 126 (showing total hours allegedly worked for work week 1/4/2015, 3/8/2015, 12/6/2015, and 12/13/2015 to be under 40 hours). Thus, Plaintiff's FLSA and NYLL overtime claims for those weeks fail as a matter of law.

For the weeks in which Plaintiff is claiming to have worked off-the-clock *overtime* hours, those claims should also fail because Plaintiff cannot establish the amount of uncompensated work she allegedly performed and that Defendants had knowledge of such work. An employee claiming unpaid overtime under the FLSA "has the burden of proving that he performed work for which he was not properly compensated." Anderson, 328 U.S. at 686-87; Seever v. Carrols Corp., 528 F. Supp. 2d 159, 169 (W.D.N.Y. 2007). When an employer kept records of the hours worked and self-reported by the plaintiff, the plaintiff bears the burden to establish the alleged unpaid off-the-clock hours with specificity or to prove that she was coerced into falsifying her time. Joza v. WW JFK LLC, No. 07-4153, 2010 WL 3619551, at *7 (E.D.N.Y. Sept. 10, 2010) (dismissing FLSA and NYLL overtime claims, holding that plaintiff failed to meet the burden to prove the alleged hours worked off-the-clock); Seever, 528 F. Supp. 2d at 170 (same).[8] Plaintiff cannot sustain this burden.

Here, Plaintiff bore the responsibility of accurately self-reporting all of the hours she worked for CNBC. (SUMF ¶¶ 10-11.) When she failed to report her hours as required, Ms. Guzman would remind her to do so. (SUMF ¶ 24; see, e.g., Guzman Decl. Exs. 2, 3, 5, 6.)

---

[8] If an employee can show that an employer has not kept records of hours worked or that they were coerced to falsify their time entries, she still bears the initial burden of proffering "sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680 (1946). Under this standard, there must be "some credible evidence that [plaintiff] performed overtime work." Daniels, 497 F. App'x at 139. Because, as shown below, Plaintiff cannot provide any credible evidence to show that she worked the alleged unpaid overtime hours, her overtime claims fail under either standard.

Several times, Ms. Guzman had to submit Plaintiff's time to Yoh for her; in those instances, Ms. Guzman copied Plaintiff on her communications to confirm with her that the hours submitted to Yoh were correct.  (SUMF ¶ 25.)  Defendants thus kept complete and accurate records of all of the hours Plaintiff reported to have worked, and there is no evidence that Plaintiff was underpaid for any overtime hours.  (See SUMF ¶¶ 76-132.)  Moreover, Plaintiff does not allege that Defendants coerced her to falsify the hours she reported to avoid overtime payments.  Indeed, Plaintiff recorded overtime hours on several occasions while she performed services for CNBC, and Yoh paid Plaintiff time and a half for all overtime hours reported.  (See, e.g., SUMF ¶¶ 94-97, 113-118.)

Plaintiff also admitted in her deposition that *she accurately reported all of her hours worked*, claiming instead that Defendants did not pay her for all of the hours she reported. (SUMF ¶ 75.)  Again, no evidence supports Plaintiff's claims.  For the specific weeks Plaintiff alleges that she was not paid for overtime hours worked, the record confirms that Plaintiff's timecards were consistent with her work schedules and that she was paid for all overtime hours recorded on her timecards, as follows (SUMF ¶¶ 76-132):

| Work Week | Alleged OT Hours Owed | Hours Scheduled | Hours Recorded on Timecard | Hours Paid, including OT for hours over 40 |
| --- | --- | --- | --- | --- |
| 3/15/2015 | 1 | 37.5 | 38.5 | 38.5 |
| 3/22/2015 | 3 | 32.5 | 32.5 | 32.5 |
| 4/26/2015 | 35 | 26.5 | 27.25 | 27.25 |
| 5/17/2015 | 2 | 46 | 46.5 | 46.5 |
| 5/24/2015 | 6.5 | 38.5 | 38.5 | 38.5 |
| 5/31/2015 | 1.5 | 36.75 | 32.5 | 32.5 |
| 6/21/2015 | 32 | 34.5 | 37 | 35.5 |
| 7/19/2015 | 31 | 34 | 34 | 34 |
| 8/23/2015 | 2 | 47.5 | 39.5 | 53.67[9] |

---

[9] This particular week involved a breaking news coverage emergency which required CNBC to ask Plaintiff to work longer hours on August 24 and 25.  (Guzman Decl. ¶ 126.)  Given the extenuating circumstances of those days, CNBC paid Plaintiff directly for those days via invoice.

| Work Week | Alleged OT Hours Owed | Hours Scheduled | Hours Recorded on Timecard | Hours Paid, including OT for hours over 40 |
|---|---|---|---|---|
| 9/6/2015 | 12.5 | 24.5 | 33.5 | 33.5 |
| 1/3/2016 | 12.5 | 20 | 20 | 20 |

Plaintiff has provided no evidence that the timecards produced by Defendants are inaccurate.  By the same token, she has no explanation as to how she possibly could have worked, in certain weeks, over 30 hours of unpaid overtime when she was scheduled to work only 25 to 35 hours.  For example, Plaintiff alleges that she is owed 31 hours of overtime pay in the week of July 19, 2015.  (Am. Compl. ¶ 53.)  If this allegation were true, Plaintiff would have worked 71 hours that week (40 regular plus 31 overtime), nearly all of the 75 hours per week in which CNBC typically broadcasts live.  (See SUMF ¶ 2.)  Ms. Guzman's schedule, however, shows that Plaintiff was scheduled for only 34 hours of work; Plaintiff then recorded and was paid for 34 hours.  (SUMF ¶¶ 109-111.)  Far from calling Ms. Guzman's schedules into doubt, Plaintiff herself has acknowledged their general accuracy and, indeed, used them to craft her allegations: When asked how she calculated her allegedly unpaid overtime hours, Plaintiff testified that she relied on her memory and a review of Ms. Guzman's schedules.  (SUMF ¶ 71.)

The only evidence that Plaintiff can proffer to support her allegations of unpaid overtime is her own speculative testimony, which has been inconsistent throughout discovery and is contradicted by undisputed documentary evidence.  For example, in response to CNBC's Interrogatory No. 3, which asked Plaintiff to identify each work week and the number of hours she purportedly was underpaid, Plaintiff first responded on November 8, 2017 that she was underpaid by an average of 7.5 hours per week throughout the entire time she worked for CNBC. (SUMF ¶ 68.)  Then, on November 30, 2017, Plaintiff amended her response to claim that she

---

(SUMF ¶ 116.)  The total payment Plaintiff received for that work week equaled approximately 40 hours at her regular rate, and 13.67 hours at an overtime rate.  Id.

worked on average 17.5 unpaid hours per week.  (SUMF ¶ 69.)  Less than a week later, on December 4, 2017, Plaintiff amended her response *again* to state the specific work weeks and purportedly unpaid hours worked that are listed in the Amended Complaint.  (SUMF ¶ 70.)

When asked at her deposition about her most recent assertions of purportedly unpaid overtime hours, Plaintiff testified that she created those estimates based on handwritten notes on her pay stubs, which she claimed to have made around June 2015 while still working for CNBC.  (SUMF ¶ 71.)  Plaintiff did not produce those annotated pay stubs before her deposition, so Defendants deposed her again on January 5, 2018 after she produced them.  (SUMF ¶ 72.)  During her second deposition, Plaintiff testified that she added the notes on her pay stubs in the summer or spring of *2016*, several months *after* her separation from CNBC and *after* she retained her first legal counsel to bring the current lawsuit.  (SUMF ¶ 73.)  She further admitted that she was "not sure" about the accuracy of her handwritten notes.  (Id.)

Plaintiff's inconsistent and speculative testimony, which has no support from the documentary record, is insufficient to support her overtime claims.  See, e.g., Lee v. Vance Exec. Protection, Inc., 7 F. App'x 160, 166 (4th Cir. 2001) (affirming summary judgment in favor of employer on FLSA overtime claim because while "[t]here is much general testimony about [uncompensated overtime] . . . the record is bereft of evidence showing the amount or extent of this extra work"); Lindsay v. Clear Wireless LLC, No. 13-834, 2016 WL 916365, at *8 (D. Minn. Mar. 10, 2016) (holding that plaintiff's "contradictory, vague, and admittedly speculative testimony" is not enough to establish that she worked off-the-clock as alleged); Nieddu v. Lifetime Fitness, Inc., 38 F. Supp. 3d 849, 859 (S.D. Tex. 2014) (dismissing FLSA overtime claims, holding that "bare, unsupported allegations" of unpaid overtime are not enough to defeat summary judgment); Joza, 2010 WL 3619551, at *7; Seever, 528 F. Supp. 2d at 170.

The facts in <u>Lindsay v. Clear Wireless LLC</u> are particularly on point. There, the court granted summary judgment to dismiss the plaintiff's FLSA overtime claims where the plaintiff had amended his interrogatory responses three times during discovery, each time revising his responses to include increasingly specific estimates of unpaid overtime, just like Plaintiff here. 2016 WL 916365, at *6-8. The plaintiff in <u>Lindsay</u> also stated that his estimate of overtime worked was based primarily on his own memory, and he failed to provide examples of the work he performed in the weeks he alleged unpaid overtime. <u>Id.</u> at *8. The court ultimately "refused to accept such unreliable testimony," noting that "self-serving testimony that contradicts previous testimony does not create a genuine issue of material fact." <u>Id.</u>

In sum, Plaintiff admits that she reported her time accurately, and the record shows that Plaintiff was paid for all overtime hours she reported. Thus, Plaintiff's bare, speculative and unreliable allegations of unpaid overtime hours are not enough to create a genuine issue of material fact on whether she worked any unpaid overtime hours. <u>See</u> <u>Perma Research & Dev. Co. v. Singer Co.</u>, 410 F.2d 572, 578 (2d Cir. 1969) (holding that a party cannot defeat summary judgment using only self-serving testimony that is inconsistent because that "would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact"). And because Plaintiff cannot prove that she actually worked any unpaid overtime hours, she also cannot prove that Defendants had knowledge of those allegedly unpaid overtime hours. <u>Daniels</u>, 497 F. App'x at 140-41 (holding that plaintiff's FLSA overtime claim also fails because she cannot prove defendant's knowledge of alleged unpaid overtime).

III.   **Plaintiff's "Recordkeeping" and "Wage Statement" Claims Under the NYLL Fail as a Matter of Law.**

    A.   **There Is No Private Right of Action for a "Recordkeeping" Claim Under NYLL.**

The courts have repeatedly held that there is no private right of action for a recordkeeping claim under the NYLL.  See, e.g., In re Domino's Pizza Inc., No. 16-6274 , 2018 WL 1587593, at *7 (S.D.N.Y. Mar. 27, 2018) ("Because no 'independent cause of action' for violations of New York's recordkeeping requirements exists, Defendants' motion to dismiss Count 8 is granted."); Mumin v. Uber Techs., Inc., No. 15-6143, 2017 WL 934703, at *18 (E.D.N.Y. Mar. 8, 2017) (dismissing claim under NYLL based on defendant's alleged "failure to maintain payroll records," holding that no such private right of action exists); Carter v. Tuttnaeur U.S.A. Co., 78 F. Supp. 3d 564, 571 (E.D.N.Y. 2015) (holding that "nothing in the NYLL authorizes an independent cause of action based on a violation of § 195(4) [of the NYLL]," which requires employees to seek payroll records).  "[T]he general consensus is that the FLSA provides no private right of action for recordkeeping violations." Chen v. Major League Baseball, 6 F. Supp. 3d 449, 460 n. 11 (S.D.N.Y. 2014).  Thus, Plaintiff's recordkeeping claim should be dismissed.

    B.   **Plaintiff's Claim for Failure to Provide Itemized Wage Statements in Violation of the NYLL Fails Because Plaintiff was Provided with a Wage Statement for Each Pay Period.**

As a threshold matter, the NYLL does not apply to Plaintiff because she was a New Jersey-based employee.  "Under New York law, it is a settled rule of statutory interpretation, that unless expressly stated otherwise, no legislation is presumed to be intended to operate outside the territorial jurisdiction of the state . . . enacting it."  Warman v. American National Standards Institute, No. 15-5486, 2016 WL 3676681, at *2 (S.D.N.Y July, 6, 2016) (internal quotations omitted).  Here, Yoh placed Plaintiff to work in Englewood Cliffs, New Jersey for CNBC, which is a company located in New Jersey.  (YSUMF at ¶¶ 6-7.)  Indeed, when Plaintiff began her

assignment at CNBC, she reported to its headquarters in Englewood Cliffs.  (YSUMF ¶¶ 8-9.)

Even Plaintiff's pay stubs reflected that she was a New Jersey employee, as Yoh withheld the

sums for New Jersey income tax and other benefits.  (YSUMF ¶ 19.)  Because Plaintiff's

employment at Yoh was based in New Jersey, the NYLL wage statement requirement does not

apply.

Even if the Court applies the wage statement requirements of the NYLL to Plaintiff, her

claim fails because it is based on the false premise that Defendants failed to pay her for overtime.

Section 195(3) of the NYLL requires employers to provide a statement for every payment of

wages that includes, in pertinent part, "the dates of work covered by that payment of wages; . . .

rate or rates of pay and basis thereof, . . . gross wages; deductions; allowances, if any, claimed as

part of the minimum wage; and net wages."  Courts have found a violation of this section of the

NYLL where there is a finding that an employer failed to pay an employee for all hours worked,

thereby violating the requirement that the statement include the "rate or rates of pay and basis

thereof."  Pierre v. Hajar, Inc., No. 15-CV-02772, 2018 WL 2393158, at *6 (E.D.N.Y. Mar. 28,

2018) ("Courts in this district have held that the furnishing of accurate information is the

legislative objective.")

In her Amended Complaint, Velazquez alleges that Defendants "failed to provide timely,

accurate, and complete wage statements including . . . hours worked and taxes withheld. . .,"

stemming from her allegations that she was not properly paid overtime compensation.  (Am.

Compl. ¶ 121.)  Discovery has not substantiated these allegations.  As described above, Plaintiff

received payment for all overtime hours that she entered into CNBC's timekeeping system.  The

indisputable evidence reveals that Plaintiff received a wage statement with each pay check

identifying all of these hours and the rates she was paid for each.  (YSUMF ¶ 19.)  Indeed, the

statements each contain a description of hours worked at her regular rate (labeled "REG HOURS"), hours worked in excess of 40 (labeled "OVERTIME"), hours worked with a shift differential (labeled "REGU+SHIFT DIFF"), and hours that Plaintiff submitted late (labeled "RETRO").  (YSUMF ¶ 21; Fields Decl. ¶ 19.)  The result is that Plaintiff undisputedly received wage statements accounting for her overtime hours.  Thus, the Court should grant summary judgment in Defendants' favor.

## IV.    Plaintiff's FLSA and NYLL Retaliation Claims Fail as a Matter of Law.

A retaliation claim under the FLSA or NYLL receives the same three-step burden-shifting analysis established by McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 (1973), which applies to Plaintiff's discrimination claims.  Mullins v. City of New York, 626 F.3d 47, 53 (2d Cir. 2010).  Under that analysis, Plaintiff has the burden to establish: "(1) participation in protected activity known to the defendant, like the filing of a FLSA lawsuit; (2) an employment action disadvantaging the plaintiff; and (3) a causal connection between the protected activity and the adverse employment action."  If this *prima facie* case is made, the burden shifts to Defendants to proffer a legitimate, non-retaliatory reason for the alleged adverse action.  Then, the burden shifts to Plaintiff to prove by a preponderance of the evidence that Defendants' legitimate reason is pretext for retaliation.

Plaintiff's retaliation claims fail as a matter of law for three reasons:  she cannot establish that she engaged in protected activity, she cannot establish any causation between her alleged protected activity and her separation from Defendants, and she cannot establish that CNBC's stated reasons for deciding to stop scheduling her were pretext for retaliation.

### A.    Plaintiff Cannot Establish Participation in Protected Activity.

An employee may premise an FLSA retaliation claim on an oral complaint made to an employer only where "the complaint 'is sufficiently detailed for a reasonable employer to

understand it, in light of both content and context, as an assertion of rights protected by the [FLSA] and a call for their protection.'" Greathouse v. JHS Sec., Inc., 784 F.3d 105, 107 (2d Cir. 2015) (quoting Kasten v. Saint-Gobain Performance Plastics Corp., 563 U.S. 1 (2011)).  The oral complaint must contain a "clear articulation of facts indicative of illegality," and "[m]ere 'abstract grumblings' will not pass muster."  Dunn v. Sederakis, 143 F. Supp. 3d 102, 112 (S.D.N.Y. 2015) (dismissing FLSA retaliation based on plaintiff's "opaque and unexplicated referenced to 'overtime'" in alleged oral complaint).

In the Amended Complaint, Plaintiff alleges that around "mid to late November 2015," Plaintiff complained to CNBC about "defendants' failure to pay her proper wages and overtime." (Am. Compl. ¶ 58.)  At her deposition, Plaintiff testified that her November 2015 complaint was directed to Ms. Guzman and consisted entirely of the oral statements "Where is my money?"; "You do this shit often. I'm tired of it."; and "I better get paid in the next week."  (SUMF ¶ 135.) These statements do not meet the Greathouse standard.  As described by Plaintiff herself, they make no reference whatsoever to overtime pay or any other right protected by FLSA, and they do not set forth facts indicative of a violation of that statute.  Plaintiff's FLSA retaliation claim should be dismissed for this reason alone.

### B.   Plaintiff Cannot Establish Causation.

Even if Plaintiff had participated in protected activity in November 2015 as alleged, Plaintiff cannot establish a causal link between her alleged complaint and CNBC's decision to stop scheduling her for assignments.

*First*, as noted above, CNBC decided to stop scheduling Plaintiff because she was chronically late for or missed her scheduled assignments, and Plaintiff was warned about her

punctuality issues multiple times before her alleged complaint in November 2015.[10]  (See, e.g., SUMF ¶¶ 31, 41, 45, 46.) When the reasons for a plaintiff's separation began before the alleged protected activity, there is no causation.  See, e.g., Giudice v. Red Robin Int'l, Inc., 555 F. App'x 67, 69 (2d Cir. 2014) (affirming dismissal of NYSHRL retaliation claims, holding that there was no causation because defendant began to discipline plaintiff before he ever complained about discrimination); Bernard v. J.P. Morgan Chase Bank N.A., No. 08- 4784, 2010 WL 423102, at *17 (S.D.N.Y. Feb. 5, 2010) ("When discipline or expressed dissatisfaction with job performance has taken place before the plaintiff engages in a protected activity, a causal nexus does not exist between the protected activity and a subsequent adverse action."), aff'd, 408 F. App'x 465 (2d. Cir. 2011).

Second, the decision to stop scheduling Plaintiff was made over two months after the alleged protected activity and after Plaintiff was late for her shifts on (at least) January 13 and 28, 2016, and then missed her assignment on January 29, 2016 when she overslept.  (SUMF ¶¶ 50-56.)  That breaks any claimed causal link.  "[C]ourts in this Circuit have consistently held that a passage of more than two months between the protected activity and the adverse employment action does not allow for an inference of causation." Moccio v. Cornell Univ., 889 F. Supp. 2d 539, 587 (S.D.N.Y. 2012), aff'd, 526 F. App'x 124 (2d Cir. 2013).  Thus, Plaintiff also cannot use temporal proximity to demonstrate causation.  Her retaliation claims fail as a matter of law.

### C.    Plaintiff Cannot Establish that CNBC's Legitimate Reasons Are Pretext for Retaliation.

Plaintiff can proffer no evidence to demonstrate that CNBC fabricated its reasons for deciding to stop scheduling her for assignments or that retaliation was the real reason for the

---

[10] As described in footnote 6, supra, no personnel from Yoh was involved in the decision to remove Ms. Velazquez from the schedule.

decision.  Indeed, there is nothing in the record to demonstrate that Defendants harbored any retaliatory animus against Plaintiff from the purported complaint she made in November 2015. Thus, even if Plaintiff could show causation and make a *prima facie* case for retaliation, which she cannot, her claim still fails as a matter of law.

## **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the Court grant this motion in its entirety and dismiss Plaintiff's claims with prejudice.

Dated: June 15, 2018                        Respectfully submitted,
      New York, New York


LITTLER MENDELSON, P.C.              MORGAN, LEWIS & BOCKIUS LLP
Kimberly J. Gost
Paul C. Lantis                       By:  */s/ Michael J. Puma*
Three Parkway                        Sam S. Shaulson
1601 Cherry St., Suite 1400          101 Park Avenue
Philadelphia, PA 19102               New York, NY 10178
Tel:  267.402.3007                   Tel:  212.309.6000

Maria Caceres-Boneau                 Michael J. Puma
900 Third Avenue                     Eric C. Kim
New York, NY 10022                   1701 Market Street
Tel:  212.497.6853                   Philadelphia, PA 19103
                                     Tel:  215.963.5000
*Attorneys for Defendant Yoh Services, LLC*
                                     NBCUNIVERSAL MEDIA, LLC
                                     Erik Bierbauer
                                     Andrew D. Jacobs
                                     30 Rockefeller Plaza
                                     New York, NY 10112
                                     Tel:  212.664.4167

                                     *Attorneys for Defendants CNBC, LLC, (f/k/a CNBC, Inc.), NBCUniversal Media, LLC, Brenda Guzman, and Mary Duffy*